STATE of Missouri,
Plaintiff-Respondent,

v.

Anthony C. MINER,
Defendant-Appellant.

No. 49590.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 24, 1985.

Motion for Rehearing and/or Transfer
Denied Jan. 21, 1986.

David C. Hemingway, Asst. Public Defender, St. Louis, for defendant-appellant.

John Munson Morris, Asst. Atty. Gen., Jennifer H. Fisher, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Presiding Judge.

Defendant, Anthony C. Miner, was charged with first degree assault in violation of § 565.050 RSMo 1978. After remand, *State v. Miner,* 657 S.W.2d 332 (Mo. App.1983), he was again convicted of the charge by a jury. He appeals conviction

and sentence as a persistent offender to serve a thirty year term.

In *Miner I*, we remanded for preserved error in the admission of rebuttal testimony on two grounds: (1) the state violated § 211.271(3) RSMo 1978 by offering evidence of defendant's juvenile record; and, (2) because defendant did not interject the issue of good character, the state was not entitled to offer evidence of defendant's prior bad acts through testimony of the state's psychiatrist who opined that defendant suffered from an anti-social personality disorder.

On retrial defendant, a friend and two expert psychiatrists testified on the extent of defendant's dependency on alcohol. Defendant's experts opined that if defendant "had had the liquor that was supposed to have been drunk by him; that is half a gallon of 1843 and a fifth of wine" on the day of the assault he could not think cooly, calmly and calculatedly. By this testimony defendant again sought to negate the required mental state for first degree assault. *See* § 562.076 RSMo Supp.1984.

As in the first trial the state called a psychiatrist in rebuttal. Defendant's sole claim of error relates to the following testimony of the director of forensic services at Malcolm Bliss Mental Health Center:

Q. Will you explain to the jury just briefly what is forensic services?

A. Forensic is that branch of psychiatry that deals with law and psychiatry, the interface. What essentially we do is conduct pre-trials as well as pre-sentencing examinations, and we also carry out custody care and treatment functions upon committment of a defendant who is found not guilty by reason of mental disease or defect.

Q. In that capacity did you have occasion to interview and evaluate the defendant here, Anthony Miner?

A. Yes sir.

Q. And was that done as a result of a court order?

A. Yes sir.

Q. And was this a routine examination for any mental disease, defect or disorder.

A. Yes sir.

. . . . .

Q. And what information do you use to base your opinion on?

A. I gather a history from the defendant and I conduct a mental status examination, and I review police reports and other collateral information like those gathered by the Forensic Service social worker.

. . . . .

Q. All right. Now doctor after making your evaluation did you come to an opinion or diagnosis based upon a reasonable degree of medical certainty as to any mental disease or disorders that Mr. Miner may have had?

A. It was my opinion that he did not have a mental disease or defect as defined in the Missouri Statutes.

Q. That being a mental disease or defect which may exclude someone from the responsibility of their act?

A. Yes sir.

Q. Is that what you mean? *Did you find any personality disorders?*

MR. HARRIS: Objection, Your Honor, irrelevant.

THE COURT: Overruled.

A. Yes. My diagnosis was *he had anti-social personality.* (our emphasis)

Defendant preserved this claim of error on the precise ground that the court erred in admitting evidence of defendant's anti-social personality over a timely specific objection of relevance and on the authority of our decision in *Miner I.*

We are unable to escape the conclusion that the state intentionally sought to offer testimony of defendant's anti-social personality and that the answer was permitted over specific objection on the ground we held valid in *Miner I.* This was in direct disregard of our prior holding. No mention was made of a prior juvenile record but the opinion of the state's psychiatrist was based on a history of defendant which

included police reports which implies prior "bad acts."

■ We are compelled to find the court erred in permitting evidence attacking defendant's character. It is impermissible for the state to attack the character of the defendant unless he first injects the issue by offering evidence of his good character. *State v. Thurman*, 521 S.W.2d 773, 777 (Mo.App.1975). Defendant's evidence of alcohol dependency is obviously not evidence of good character. In addition, this issue was not an open question on remand because it was decided in the first appeal.

■ The proposed dissent in the present case finds no prejudice to the defendant. This view ignores the fact that issue has been decided between the parties in *Miner I*. In *Miner I* this court held that the exact testimony presented in the retrial was irrelevant. Even if an appellate judge could reach the view that testimony of antisocial personality did not influence at least one juror on the retrial, we are not authorized to change the law of the case between these parties. The state's psychiatrist testified to more than a conclusion, he also testified to a history from the defendant, a review of police reports and other collateral information. This testimony injected into the retrial precisely the evidence which we found and held was irrelevant and a violation of the rule excluding evidence attacking the defendant's character. This testimony is obviously not rebuttal to the defense of intoxication. The proposed dissent would properly be a dissent in *Miner I* but wholly ignores the holding of *Miner I* and the fact that both parties had a right to rely upon that opinion as a final judgment on the issue presented. We fail to understand why the evidence held reversible in *Miner I* was offered in the retrial unless the state felt no obligation to follow our decision in *Miner I* and that the evidence was necessary for conviction. The parties, the trial court and this court are bound by our decision in *Miner I*, a matter of law not considered and discussed by the dissent.

Because we have no choice we reverse and remand for a second retrial.

SIMON, J., concurs.

GARY M. GAERTNER, J., dissents in separate opinion.

GARY M. GAERTNER, Judge, dissent.

I have no quarrel with the rule of law that excludes evidence attacking a defendant's character unless the defendant introduces evidence tending to establish his good character. I cannot agree, however, that the state's breach of this rule prejudiced the defendant in the instant case.

If the evidence of bad character involves some specific bad act(s) committed by the defendant, then the possibility of prejudice runs high. The jury may in such case be induced to convict the defendant for his prior bad act(s), while losing sight of the crime for which the defendant stands trial. For example, in the only case cited by the majority, *State v. Thurman*, 521 S.W.2d 773 (Mo.App.1975), defendant's manslaughter conviction was reversed because the state interjected evidence showing that defendant once picked up a cat and threw it against a wall until it died. Similarly, evidence of a defendant's juvenile record is highly prejudicial, as indicated by the reversal of defendant's first conviction in this case. *State v. Miner (Miner I)*, 657 S.W.2d 332 (Mo.App.1983).

When, however, the evidence of a defendant's bad character consists only of an opinion as to the defendant's personality, then the risk of prejudice is significantly reduced. In the case before us, the majority reverses defendant's conviction because the state's psychiatric expert testified that defendant "had anti-social personality." It stretches the imagination to conceive that the jury might have convicted defendant merely because he had such a personality disorder.

Defendant's own admissions further minimize the prejudicial effect of the psychiatrist's testimony. Defendant testified at trial that he attacked his wife with a meat cleaver after drinking a pint of bourbon, one-fifth gallon of wine and several beers. Such actions clearly constitute anti-social

behavior. Given this testimony, is it conceivable that evidence of defendant's anti-social personality further denigrated his character in the minds of the jurors? I think not.

The majority contends that this dissent represents little more than a belated argument of issues already raised and decided in *Miner I.* A close reading of *Miner I* indicates, however, that the court reversed defendant's conviction on that appeal because the state had introduced evidence regarding defendant's juvenile record. Although the court remarked that evidence of defendant's personality was irrelevant, nowhere did it hold that the admission of such evidence was so prejudicial that it constituted reversible error. The prejudicial effect of such evidence thus remains an open question on this appeal. By mischaracterizing the holding in *Miner I,* the majority has allowed itself to sidestep this important question. Such abdication of judicial responsibility does a disservice to the cause of justice.

For the foregoing reasons, I respectfully dissent.