STATE ex rel. Dennis
BULLOCH, Relator,

v.

Honorable A.J. SEIER, Judge of the
Circuit Court of Cape Girardeau
County, Missouri, Respondent.

No. 71012.

Supreme Court of Missouri,
En Banc.

May 16, 1989.

As Modified on Denial of Rehearing
June 13, 1989.

Arthur S. Margulis, St. Louis, for relator.

Thomas J. Mehan and Tom W. DePriest, Asst. Pros. Attys., St. Louis County, Clayton, for respondent.

## PROCEEDING IN PROHIBITION

RENDLEN, Judge.

Relator instituted this proceeding to prohibit respondent from allowing the state to prosecute relator for armed criminal action in connection with the death of his wife, Julia Bulloch. The Court of Appeals, issuing the requested writ, concluded prosecution for armed criminal action violated relator's protection under the Double Jeopardy Clause of the Fifth Amendment of the Constitution of the United States. We granted transfer and now make the preliminary rule absolute.

On May 6, 1986, relator's wife was asphyxiated when two strips of cloth were placed in her mouth and retained by tape wrapped around her face and over her mouth. The victim died at the family home, in which a fire occurred almost immediately following her death. Indicted on a charge of first degree murder in August, 1986 and, a month later, on a charge of second degree arson, relator was first tried for murder and the state elected to seek the death penalty. At trial, relator contended his wife's death was an accident resulting from an episode of consensual sexual bondage, but admitted starting the fire. The jury found relator not guilty of

first or second degree murder and returned a verdict of guilty on the lesser offense of involuntary manslaughter. Relator was sentenced to a term of seven years' imprisonment.

Following the homicide trial, relator was indicted on additional charges of armed criminal action and tampering with physical evidence. The armed criminal action indictment charged that relator recklessly caused the death of Julia Bulloch by asphyxiation and committed the felony of involuntary manslaughter "by, with, or through the use, assistance or aid of a dangerous instrument." [1] In response to a motion to dismiss that indictment, the state contended the tape and gag constituted a "dangerous instrument." Respondent overruled relator's motion to dismiss, which was based upon claims of double jeopardy, collateral estoppel, absence of legislative intent, and denial of due process in the form of prosecutorial vindictiveness. The Court of Appeals, Eastern District, concluded the question of prosecutorial vindictiveness involved disputed facts and was a matter for the trial court's discretion to be considered, if necessary, on direct appeal; however, the court found that the armed criminal action proceeding constituted double jeopardy and issued its writ of prohibition. During pendency of the proceedings in prohibition, relator was tried and convicted of arson and the tampering with physical evidence charge which had been added after the homicide trial, and he was sentenced to six and five years' imprisonment, respectively.

The circumstances here present questions under the Double Jeopardy Clause, which has been said to protect against a second prosecution for the same offense after acquittal or conviction and preclude imposition of multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S.

161, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).[2] The concept of what constitutes the "same offense" in the context of double jeopardy was discussed in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), wherein it was stated: "The test to be applied to determine whether there are two offenses or only one is whether *each provision requires proof of a fact which the other does not.*" *Id.* 52 S.Ct. at 182. Recent United States Supreme Court jurisprudence, however, has limited application of the *Blockburger* test in cases involving a single trial. *See, e.g., Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). In *Missouri v. Hunter*, it was noted: "the *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose *the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.*" *Id.* 103 S.Ct. at 679 (quoting *Albernaz*, 450 U.S. 333, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981) (emphasis in original). In *Hunter* the United States Supreme Court rejected this Court's erroneous notion that prosecution of a defendant for both first degree robbery and armed criminal action was violative of the Double Jeopardy Clause. The Court held "the question of what punishments are constitutionally permissible is no different from the question of what punishments the Legislative Branch intended to be imposed...." 103 S.Ct. at 679. Because the Missouri Legislature clearly intended cumulative punishment under the armed criminal action statute, the Court found defendant was not subjected to double jeopardy.

---

1. The state does not contend that additional facts necessary to sustain the armed criminal action charge had not occurred or were not discovered despite the exercise of due diligence at the time of the murder trial. Indeed, it appears that the state was fully aware of the facts alleged in the armed criminal action indictment when it proceeded to prosecute relator for first degree murder.

2. The double jeopardy clause of the Missouri Constitution, art. I, § 19, has been construed to apply "only where there has been an acquittal of the defendant by a jury." *Murray v. State*, 475 S.W.2d 67, 70 (Mo.1972).

The core issue of double jeopardy for convictions of robbery in the first degree as well as armed criminal action was decided by this Court in 1977 in *State v. Treadway*, 558 S.W.2d 646 (Mo. banc 1977), *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978). In that case, we properly took the position that multiple convictions for both armed criminal action and the underlying felony were not violative of the Double Jeopardy Clause of the United States Constitution. Two years later, the Court took the same position in *State v. Valentine*, 584 S.W.2d 92 (Mo. banc 1979), but six months thereafter on January 15, 1980, this Court handed down the first of its aberrant decisions in *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980) [*Sours I*], in which it vacated a conviction of armed criminal action that had been entered with a robbery first degree conviction.[3] The United States Supreme Court vacated and remanded *Sours I* for reconsideration in light of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), which gave adequate guidance for this Court to uphold the armed criminal action conviction in *Sours*. Nevertheless, this Court in *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980) [*Sours II*] intransigently refused to follow the teachings of *Whalen* and vacated Sours's armed criminal action conviction once more. Certiorari was again sought in the United States Supreme Court, but prior to a hearing there Sours was released from confinement and certiorari was denied. Noteworthy is the fact that Justice Blackmun and Justice Rehnquist, advised of Sours's release, would have dismissed the petition as moot. *Missouri v. Sours*, 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981). In March of 1981, in *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), the Supreme Court forcefully reiterated its position, squarely contrary to that of this Court in *Sours I* and *Sours II*. At that point, the United States Supreme Court, acutely aware of the problems flowing from *Sours I* and *II*, noted that the various districts of the Missouri Courts of

Appeals, assuming they were bound by this Court's *Sours* decisions, had in a growing number of cases felt required to reverse armed criminal action convictions. Between March 23 and June 22, 1981, the United States Supreme Court vacated judgments of reversal in sixteen such cases and in each instance remanded the cause for further consideration in light of *Albernaz*. In addition, at the time of this Court's decision in *State v. Haggard*, 619 S.W.2d 44 (Mo. banc 1981), where this Court obdurately refused to follow *Albernaz*, the Supreme Court accepted review of three of our cases including *State v. Williams*, 606 S.W.2d 777 (Mo.1980); *State v. Kendrick*, 606 S.W.2d 643 (Mo.1980); and *State v. Greer*, 605 S.W.2d 93 (Mo.1980). *See Missouri v. Greer*, 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981). In *Albernaz*, the Court affirmed the opinion of the United States Court of Appeals for the Fifth Circuit upholding petitioner's conviction and sentences and denying his claim of double jeopardy. The Court, by way of introduction to its incisive, pellucid opinion, noted that:

We granted certiorari to consider whether Congress intended consecutive sentences be imposed for the violation of these two conspiracy statutes and, if so, whether such cumulative punishment violates the Double Jeopardy Clause of the United States Constitution.

101 S.Ct. at 1140. By its decision the Court, in its concluding paragraphs, removed any question as to its views on the matter, stating:

Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishment, imposition of such sentences does not violate the Constitution.

101 S.Ct. at 1145.

Immediately after this pronouncement, the Court commenced a succession of orders to Missouri's appellate courts vacating

---

3. In neither *Sours I* nor its progeny did this Court make clear how half of a judgment (i.e.

armed criminal action) was invalid but the other half (robbery) was perfectly valid.

**74**

judgments which had reversed armed criminal action convictions when accompanied with convictions of other crimes and mandating further consideration in the light of *Albernaz.*

Notwithstanding these directions from the United States Supreme Court, this Court refused to honor the "rule of supremacy" and would not accept the Court's interpretation of the organic law embodied in the Constitution of the United States. By refusing so to do, the majority sought to burden the Missouri Legislature with its view of so-called federal constitutional restraints contrary to those enunciated by the United States Supreme Court under the federal Constitution. In *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975), the Court wrote "a state may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them." (Emphasis in original.) The Oregon Court's restrictive misinterpretation of the 14th Amendment in that case was cast aside as error. Despite these developments, detailed in the dissent of this writer in *State v. Haggard,* 619 S.W.2d 44, 51–57 (Mo. banc 1981) (responding to the opinion of Welliver, J., on the motion for rehearing), it was pointed out this Court refused to abide directives of the Supreme Court of the United States and was willing to burden our legislature with federal constitutional notions contrary to the Court's mandate. As related in that dissent, "Neither the Oregon court in *Hass* nor the North Carolina court in *North Carolina v. Butler,* [441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)] were permitted to journey such an imperious path of nonconformance." 619 S.W.2d at 57.

But that was merely the tip of the iceberg. Immediately upon the heels of *Haggard,* the same mistaken notion was pressed upon the following cases in quick order by this Court and led to wholesale reversal of armed criminal action convictions in: *State v. Fletcher,* 619 S.W.2d 57 (Mo. banc 1981); *State v. Greer,* 619 S.W.2d 62 (Mo. banc 1981); *State v. Williams,* 619 S.W.2d 63 (Mo. banc 1981); *State v. Hawkins,* 619 S.W.2d 64 (Mo. banc 1981); *State v. Greer,* 619 S.W.2d 65 (Mo. banc 1981); *State v. Collins,* 619 S.W.2d 66 (Mo. banc 1981); *Brown v. State,* 619 S.W.2d 68 (Mo. banc 1981); *State v. Helton,* 619 S.W.2d 69 (Mo. banc 1981); *State v. McGee,* 619 S.W.2d 70 (Mo. banc 1981); *State v. Tunstall,* 619 S.W.2d 71 (Mo. banc 1981); *State v. Counselman,* 619 S.W.2d 72 (Mo. banc 1981); *State v. Sinclair,* 619 S.W.2d 73 (Mo. banc 1981); *State v. Payne,* 619 S.W.2d 75 (Mo. banc 1981); *State v. Crews,* 619 S.W.2d 76 (Mo. banc 1981); *State v. Lowery,* 619 S.W.2d 77 (Mo. banc 1981); *State v. Crews,* 619 S.W.2d 78 (Mo. banc 1981); *State v. White,* 619 S.W.2d 79 (Mo. banc 1981); *State v. Martin,* 619 S.W.2d 80 (Mo. banc 1981); and *State v. Williams,* 619 S.W.2d 82 (Mo. banc 1981). During this period and in the weeks that followed until *Hunter* was specifically directed to the Missouri courts, enumerable writs of habeas corpus and direct orders were mistakenly issued by this Court vacating an array of felony convictions, producing a chaotic situation in Missouri.

On November 10, 1981, this Court denied review of the decision of the Western District of the Court of Appeals in *State v. Hunter,* 622 S.W.2d 374 (Mo.App.1981), which had vacated the defendant's armed criminal action conviction on double jeopardy grounds, leaving only his robbery conviction. Reaching directly to the Court of Appeals by writ of certiorari, the Court vacated the decision of the Missouri Court of Appeals and remanded with the ringing mandate for reinstatement of the armed criminal action conviction. In that opinion, delivered by Chief Justice Burger, the Supreme Court reviewed the strange history of this Court's failure to follow *Whalen* and *Albernaz* and pointed out that the decisions in *Sours I, Sours II,* and *Haggard* expressed a view which "manifests a misreading of our cases on the meaning of the double jeopardy clause of the Fifth Amendment." 103 S.Ct. at 677. The Court, brushing aside the *Blockburger* argument, pointed out that:

[h]ere, the Missouri Legislature has made its intent crystal clear. legisla-

tures, not courts, prescribe the scope of punishments.

Where as here, a legislature specifically authorizes cumulative punishments under two statutes, regardless of whether those two statutes prescribe the "same" conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishments under such a statute in a single trial.

*Id.* at 679 (footnote omitted).

■ *Hunter,* of course, involved a single trial. Had the charges in the case at bar been tried in one proceeding, there could be no question relator's claim of double jeopardy would fail. However, because the charge of armed criminal action was not tried with the underlying felony, the Double Jeopardy Clause prohibition against successive prosecution must be considered and we must determine whether *Hunter* controls this case. Our task in this regard is somewhat complicated by § 565.004, RSMo 1986, pertaining to joinder of offenses in a trial for first degree murder.[4] As evident from the plain language of the statute, circumstances allowing joinder of offenses with first degree murder are limited; but where, as here, the charges arose from the same transaction and relate to acts committed against the same victim, the murder and armed criminal action counts could have been joined and tried together. § 565.004.2, RSMo 1986.

■ Fully aware that in all likelihood relator would not have wanted the armed criminal action charge tried with the first degree murder offense had the indictments been returned contemporaneously, we must nonetheless conclude that relator's protection against successive prosecution for the same offense would be violated if the current prosecution for armed criminal action were allowed. Section 571.015, RSMo 1986, defines armed criminal action thusly:

1. [A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is *also* guilty of the crime of armed criminal action....

Armed criminal action, by definition, incorporates all the elements of the underlying felony. Here the armed criminal action indictment contains an allegation relator committed the felony of involuntary manslaughter, and it cannot be said that in this instance proof of involuntary manslaughter requires proof of an additional fact which the armed criminal action charge does not. The state unquestionably relies on and will attempt to prove the elements of involuntary manslaughter in establishing relator's commission of armed criminal action. The two offenses are therefore the same for purposes of relator's claim of successive prosecution, and unless the teachings of *Hunter* can be said to reach cases of successive prosecution, we must abide the earlier decisions of the United States Supreme Court in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980); and *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 2226–7, 53 L.Ed.2d 187 (1977). Although we embrace the philosophy reflected in *Hunter,* the Court's strong em-

---

4. Section 565.004, RSMo, provides in pertinent part:

1. Each homicide offense which is lawfully joined in the same indictment or information together with any homicide offense or offense other than a homicide shall be charged together with such offense in separate counts. A count charging *any* offense of homicide *may only* be charged and tried together with one or more counts of *any other homicide or offense other than homicide when all* such offenses arise out of the same transaction *or constitute part of a common scheme or plan.* Except as provided in subsections 2, 3, and 4 of this section, no murder in the first degree offense may be tried together with any of-

fense other than murder in the first degree....

2. A count charging *any* offense of *homicide of a particular individual may be* joined in an indictment or information and tried with one or more counts charging alternatively *any other homicide or offense other than a homicide* committed *against that individual.*

....

4. *When the state waives the death penalty* for a murder first degree offense, that offense may be tried and submitted to the trier together with any other charge with which it is lawfully joined.

(Emphasis added.)

phasis on the fact that case involved a single proceeding leads us to reluctantly conclude *Hunter* does not control in this instance, where there is an attempt at successive prosecution.

For the reasons stated in this opinion, the rule in prohibition is made absolute. Having so held, we need not reach the other questions raised by the parties.

BILLINGS, C.J., concurs.

ROBERTSON and COVINGTON, JJ., concur in result.

BLACKMAR, J., concurs in result in separate opinion filed.

WELLIVER, J., concurs in result and concurs in concurring in result opinion of BLACKMAR, J.

HIGGINS, J., concurs in separate opinion filed.

BLACKMAR, Judge, concurring in result.

## I.

The rambling narration of the history of the construction of § 571.015, RSMo 1986, is quite beside the point. The discussion should start, rather than ending, with *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), which held that, in a single trial, cumulative punishments could be assessed for a felony (such as armed robbery) and for armed criminal action for the use of a dangerous instrument or deadly weapon in the perpetration of that felony. By this analysis, the underlying felony is in effect a lesser offense included within the charge of armed criminal action. I rather agree that *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) and *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) preclude the separate trial of the greater offense, after the lesser has been separately tried, regardless of the result of the initial trial.

I accept the statement in the principal opinion that § 565.004.2, RSMo 1986, authorizes the trial of a homicide offense, including murder in the first degree, with a nonhomicide offense such as armed criminal action. In any event the charges could have been brought in the same indictment or information, Rule 23.05, and tried jointly pursuant to Rule 24.07. Inasmuch as the counts could have been tried together, the state should not now be allowed to try the armed criminal action separately.

For another reason I believe that the writ of prohibition should be made absolute. The "dangerous instrument" relied upon consists of tape and cloth. The state argues that an instrument which produces death may be found to be dangerous if it is used in such a way as to cause death or serious injury. This, however, requires a showing of a purpose of so using the instrument. The jury in the initial trial declined to find that the defendant acted with the purpose of causing death or serious injury when it acquitted him of the charge of murder in the second degree. By the verdict of guilty of involuntary manslaughter it found only that he had acted "recklessly" in using the tape and the gag. I do not believe that the armed criminal action statute was intended to cover a situation of the kind shown by this record.

The prosecutor argues that no particular state of mind is required under § 571.015, citing *State v. Miller*, 657 S.W.2d 259 (Mo. App.1983), and *State v. Helm*, 624 S.W.2d 513 (Mo.App.1981). It is suggested that it only need be shown that the defendant acted recklessly. *Miller* involved a firearm and *Helm* a machete. Whatever the case might be as to these weapons, which could be said to be inherently dangerous, the instrument charged in the information is dangerous only if used with the purpose of causing death or bodily harm. The first jury has foreclosed a finding of any such purpose.

By the state's argument a defendant convicted of involuntary manslaughter through reckless operation of an automobile could be separately tried for armed criminal action for the same killing. I do not believe that the legislature had this kind of a situation in mind when it passed the armed criminal action statutes.

It is unusual to terminate a criminal prosecution by writ of prohibition, but I am convinced that the underlying prosecution lacks sound legal basis. I therefore join in making the preliminary rule absolute.

HIGGINS, Judge, concurring.

I agree with the principal opinion in its concession that *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), "does not control" this case. The *Hunter* discussion is thus extraneous, and I look to that part of the opinion that cites and applies *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), and *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), to support its judgment.

I agree that *Vitale* and *Brown* are dispositive of the limited issue in this case; and for that reason, I concur.