**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**Pedro M. HERNANDEZ, Defendant–Appellant.**

**Pedro M. HERNANDEZ, Plaintiff–Appellant,**

**v.**

**STATE of Missouri, Defendant–Respondent.**

**Nos. 16477, 17052.**

Missouri Court of Appeals, Southern District, Division Two.

July 26, 1991.

Motion for Rehearing or Transfer Denied Aug. 16, 1991.

Application to Transfer Denied Oct. 16, 1991.

**Richard L. BROWN, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. WD 44472.**

Missouri Court of Appeals, Western District.

July 23, 1991.

Before FENNER, P.J. and TURNAGE and ULRICH, JJ.

**68**

Melinda K. Pendergraph, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PER CURIAM.

A jury found Pedro M. Hernandez (defendant) guilty of involuntary manslaughter and recommended punishment of imprisonment for a term of seven years. § 565.024.1(2).[1] The jury also found defendant guilty of the offense of armed criminal action and recommended that he be sentenced to life imprisonment for that offense. § 571.015. The trial court sentenced defendant in accordance with the recommendations of the jury. Following sentencing, defendant filed a motion for post conviction relief pursuant to Rule 29.-15. It was overruled without an evidentia-

---

1. Citations to statutes are to RSMo 1986.

ry hearing. Defendant appeals the convictions in the criminal case and the order overruling his Rule 29.15 motion. The appeals were consolidated as required by Rule 29.15(*l*).

For the reasons that follow this court reverses the judgments of conviction for involuntary manslaughter and armed criminal action and remands the case for new trial for the offense of involuntary manslaughter only. The appeal of the order dismissing the Rule 29.15 motion is dismissed.

The state first charged defendant with involuntary manslaughter. The state later amended the information by adding the charge of armed criminal action.

The evidence favorable to the verdicts is as follows. On September 12, 1988, Cecil Barrymore was killed as a result of a motor vehicle accident. Barrymore's employer, Robert Butcher, and the employer's son, Kevin Butcher, were also injured in the accident. Robert Butcher was driving a truck in which his son, Kevin, and Barrymore were passengers. The truck was traveling in a southerly direction on Highway 123 in Polk County when it was struck by a van that was traveling in the opposite direction on the same highway. The van was operated by defendant. When Robert Butcher first saw the van it was coming around a curve, sliding into the wrong lane of travel. Two of the van's wheels were off the ground. Butcher applied his brakes and pulled his truck as far to his right as possible. The van returned to its proper lane then came back into Butcher's lane of traffic and collided with Butcher's truck. The truck was knocked into the ditch that ran alongside the roadway and the van overturned in an adjacent field. Defendant was thrown from the van.

Other persons arrived at the scene of the accident shortly after it occurred. They included Sherry Howard, an employee of the Citizens Memorial Hospital Ambulance Service; George Janzekovich, a 17–year veteran of the Highway Patrol; and Dr. Bill Matthews, a physician from a nearby town.

Sherry Howard attended to defendant. She asked defendant if he had been drinking. Defendant replied that he had drunk "a 12–pack and some whiskey." Ms. Howard described defendant's conduct as erratic—"At times he would be very cooperative, and then within a few minutes he would be very combative and try to resist treatment."

Trooper Janzekovich described his observations of defendant at the scene of the accident. He stated that defendant's "speech was also slurred and his tongue was thick." In Trooper Janzekovich's opinion, defendant was intoxicated.

Dr. Matthews examined Cecil Barrymore at the scene and pronounced him dead. Dr. Matthews testified that Cecil Barrymore died as a result of injuries sustained from the accident.

The van operated by the defendant was registered to him and the insurance certificates for the vehicle were issued to him. The sun visor from the interior of the van was received in evidence over defendant's objection, as was a sign that had been attached to the back window of defendant's van. There were stickers and pins attached to the visor. The stickers, pins, and the sign had various slogans printed on them, including:

"The more I drink, the better you look";

"Reality is for those who can't stay drunk";

"Member beer drinkers hall of fame";

"I only drink to make other people more interesting";

"A woman drove me to drink. Now I can't thank her enough";

"I never drink before five … it's too early in the morning!";

"Suds sucker";

"Hell on wheels";

"All American drinking team"; and

"I love older whiskey and younger women."

Defendant contends that the trial court erred in admitting into evidence the signs, stickers, and pins with the statements containing "drinking slogans." Defendant contends that those items were irrelevant

to the criminal charges against him. He argues that the drinking slogans that were admitted in evidence were used to try to show him to be the "type" person who would commit the crime in question.

In order for evidence to be relevant, it must logically tend to support or establish a fact or issue between the parties. *State v. Moore*, 435 S.W.2d 8, 11 (Mo. banc 1968). The elements of the offense of involuntary manslaughter that were required to be proven were: (1) that defendant drove in an intoxicated state; (2) that defendant acted with criminal negligence; and (3) that, in so doing, defendant caused Cecil Barrymore's death. § 565.024.1(2). *State v. Dagley*, 793 S.W.2d 420, 424 (Mo. App.1990); *State v. Lewis*, 735 S.W.2d 183, 185 (Mo.App.1987). Thus, the issue on appeal is whether evidence of the drinking slogans logically tended to support or establish any one or more of those elements.

Criminal negligence refers to the degree of culpability of the defendant's mental state, § 562.016.5.[2] It is the least culpable of the defined mental states. Criminal negligence is conduct which amounts to a gross deviation from the standard of care which a reasonable person would exercise in the situation. *State v. Lewis, supra*, at 186.

The state argues that the drinking slogans are relevant because the remarks show that the defendant *"knew* that drinking large amounts of alcohol could distort his sense of reality and his driving skills." That argument fails because the defendant's knowledge of the effect of alcohol on him was not an issue. It was not something that the state had the burden to prove in order to show criminal negligence. The essence of motor vehicular manslaughter—the factor that distinguishes it from other types of homicides—is the defendant's lack of awareness of the risk to others from his conduct. *Reed v. U.S.*, 584 A.2d 585, 588 (D.C.App.1990). The state

did not have to prove that the defendant knew of the effects of alcohol upon him.

Evidence is irrelevant if it does not logically tend to prove or disprove a fact in issue or to corroborate evidence which itself is relevant and bears on the principal issue. *State v. Taylor*, 739 S.W.2d 220, 223 (Mo.App.1987). The drinking slogans were not relevant to the issue of whether defendant acted with criminal negligence.

The state also argues that the drinking slogans were relevant because "they tended to prove that [defendant] did not accidentally or mistakenly drink alcohol, in that his display of such items indicated that [he] approved of excessive drinking." That is another way of saying that because defendant approves of excessive drinking, he is a bad person—he is a person of poor character. Reputation or character testimony is admissible only when a defendant has put his own reputation in issue. *State v. Miner*, 703 S.W.2d 73, 75 (Mo.App.1985); *State v. Milligan*, 654 S.W.2d 204, 208 (Mo. App.1983); *State v. Thurman*, 521 S.W.2d 773, 777 (Mo.App.1975). In this case, defendant's reputation was not in issue. The trial court erred in admitting evidence of the drinking slogans.

The remaining question is whether the admission of the drinking slogans into evidence was prejudicial. In considering that question, it is necessary to consider how the prosecuting attorney used that evidence. In his closing argument to the jury, the prosecuting attorney made the following statements:

> So I think to a large extent this jury ... is going to set a maximum of what you feel a DWI that killed somebody is worth based on the facts that you've got. The more I drink, the better. What's a person display in their lives? You probably all have trophies hanging on your walls, wall trophies maybe, some of you ladies may quilt and be real proud of that. My

**2.** § 562.016.5 provides:

> 5. A person **"acts with criminal negligence"** or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result

> will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

grandma used to do that. What does a person display? They display the things they're proud of. What was Pedro Hernandez proud of? The more he drinks, the better he looked. The more he drinks the better Cecil Barrymore looked. Did you read the pins as they came by? "All–American drinking team." What are the things Pedro Hernandez is proud of, folks? "I love older whiskey and younger woman." [sic] I really don't— "I don't really drink, but sometimes I gargle whiskey and it slips." "Reality," and this is the catcher, "is for those who can't stay drunk."

.　　.　　.　　.　　.

Again, what is a person—what—What does someone display? They display the things they're proud of—pictures of your children, pictures of your granddaughter. I have some of my daughter's little color drawings from preschool up in my office of the courthouse in my office. They're right there with my diplomas. Those are important to me. What's important to you? What do you have hanging on your walls at home? What do you have? Do you have a bumper sticker? "Baby on Board" maybe. Or does yours say, "The more I drink, the better you look"? Do you have a pin that says, "Hell on wheels," "Suds sucker," "I never drink before five. It's too early in the morning." "A woman drove me to drink. Now I can't thank her enough." "I only drink to make other people more interesting." "Member, beer drinkers' hall of fame." And then I keep coming back to that last one. "Reality is for those who can't stay drunk."

The prosecuting attorney did not simply offer the drinking slogans into evidence and get them admitted. He dwelled on the content of the slogans at length in his closing argument—both in the opening part of his argument and in the rebuttal part of his argument. He argued, in effect, that the jury should assess a maximum sentence in this case because of the beliefs of this defendant regarding the use of intoxicants—and the jury assessed the punishment that the prosecuting attorney asked them to assess. In order to find that the use of the drinking slogans was not prejudicial, this court would have to find "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Satterwhite v. Texas*, 486 U.S. 249, 258–59, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988), *citing Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Based upon the written record of the trial as it appears in the transcript on appeal, this court is unable to say that the admission of the drinking slogans into evidence, considering the prosecuting attorney's extensive references to them, was not prejudicial. The prosecuting attorney's fixation on those slogans compounded their impact on the jury. The improper admission of the slogans into evidence begot the improper argument of the prosecuting attorney. It is unfortunate when prosecuting officials with otherwise strong evidence in support of a conviction choose to go beyond the legitimate evidence that is available to them and pursue other inflammatory and irrelevant triviality in quest of conviction. When this occurs, the result of appellate review is assured. The judgment of conviction of the offense of involuntary manslaughter must be reversed and the case remanded for a new trial.

Although defendant's conviction of the offense of armed criminal action cannot stand because the underlying criminal offense—the involuntary manslaughter charge—must be reversed, it is appropriate to review the question of whether the offense of involuntary manslaughter as established by § 565.024.1(2) can support an armed criminal action charge. Unless that question is resolved as part of this appeal, the trial court, in the event of a new trial, will be afforded no direction as to how to proceed or whether to proceed as to the charge of armed criminal action.

 The armed criminal action statute does not set forth specifically a culpable mental state as an element of the offense. *State v. Miller*, 657 S.W.2d 259, 261 (Mo. App.1983). However, § 562.021.2 states "if the definition of an offense does not

expressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly or recklessly, *but criminal negligence is not sufficient."* (Emphasis added). Although § 562.026 provides that a culpable mental state is not required if the statute defining the offense clearly indicates a purpose to dispense with the requirement of a mental state, no such intention is expressed in § 571.015—the armed criminal action statute. Accordingly, armed criminal action requires a culpable mental state of acting purposely, knowingly or recklessly. *State v. Elam,* 779 S.W.2d 716, 718 (Mo.App.1989). By definition, armed criminal action incorporates all the elements of the underlying felony. *State ex rel. Bulloch v. Seier,* 771 S.W.2d 71, 75 (Mo. banc 1989). An essential element of the underlying crime in this case was that the defendant acted with criminal negligence. It is the least culpable of the mental states and lacks the moral implication of intent, knowledge and recklessness.[3] Such an element will not support a conviction of armed criminal action. *State v. Elam, supra;* § 562.021.2.

Having determined that the judgments of conviction must be reversed, the order entered by the motion court dismissing defendant's Rule 29.15 motion is moot. That appeal must be dismissed.

The convictions of involuntary manslaughter and armed criminal action in case no. 16477 are reversed. That case is remanded to the circuit court for new trial for the offense of involuntary manslaughter only. The appeal of the order overruling defendant's Rule 29.15 motion in case no. 17052 is dismissed.

---

**3.** Although it is unnecessary to consider the question of whether a defendant convicted of involuntary manslaughter through reckless operation of an automobile could also be tried for armed criminal action for the same killing, an answer to such an inquiry was suggested in *State ex rel. Bulloch v. Seier,* 771 S.W.2d 71, 76 (Mo. banc 1989) (Blackmar, J., concurring). It was suggested that the legislature did not have "this kind of a situation in mind when it passed the armed criminal action statutes."

**1.** Model Penal Code § 202(2)(d) defines criminal negligence:

SHRUM, J., concurs in part and dissents in part in separate opinion.

SHRUM, Judge, concurring in part and dissenting in part.

I concur in the portion of the majority opinion that reverses the defendant's conviction for armed criminal action. I respectfully dissent from the part of the opinion that reverses the defendant's involuntary manslaughter conviction. I dissent because I believe that three of the drinking slogans were relevant and admissible, and I believe the admission into evidence of the other drinking slogans was not prejudicial to the defendant.

In examining the criminal negligence element of involuntary manslaughter, the explanatory notes following § 2.02 of the Model Penal Code are instructive because the definition of criminal negligence found in § 562.016.5 is derived from that section of the code. Comment to 1973 Proposed Missouri Criminal Code § 562.016, 40 V.A.M.S. 234–35 (1979). The model code definition of criminal negligence has been used with slight variations in most of the recent criminal law revisions in other jurisdictions. *Id.* at 235.[1]

The explanatory notes following Model Penal Code § 2.02 state, in pertinent part:

A person acts negligently under this subsection when he inadvertently creates a substantial and unjustifiable risk of which he ought to be aware. He is liable if given the nature and degree of the risk, his failure to perceive it is, considering the nature and purpose of the actor's conduct and the circumstances known to him, a gross deviation from the care that

---

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

would be exercised by a reasonable person in his situation.... The tribunal must evaluate the actor's failure of perception and determine whether, under all the circumstances, it was serious enough to be condemned. The jury must find fault, and must find that it was substantial and unjustified....

[T]he jury is asked to perform two distinct functions. First, it is to examine the risk and the factors that are relevant to its substantiality and justifiability. In the case of negligence, these questions are asked not in terms of what the actor's perceptions actually were, but in terms of an objective view of the situation as it actually existed. Second, the jury is to make the culpability judgment, this time in terms of whether the failure of the defendant to perceive the risk justifies condemnation. Considering the nature and purpose of his conduct and the circumstances known to him, the question is whether the defendant's failure to perceive a risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

*Model Penal Code and Commentaries*, § 2.02 note 4 at 240–41 (American Law Institute 1985).

Under the approach described in the above quoted Model Penal Code commentary, the jury first had to determine that the defendant created a substantial and unjustifiable risk of which he ought to have been aware. Under the § 562.016.5 objective standard of care (that which a reasonable person would exercise in the situation), the jury reasonably could have concluded the defendant ought to have been aware that, in taking to the road in an intoxicated condition, he created the substantial and unjustifiable risk that he would cause the death of another person.

The second aspect of the criminal negligence inquiry requires the jury to decide whether the failure of the defendant to perceive the risk is a "gross deviation" from the reasonable person standard of care of § 562.016.5, and whether such failure of perception "justifies condemnation."

*Model Penal Code and Commentaries* § 2.02 at 241. The jury's inquiry now departs from the reasonable person standard and focuses on the defendant's actual perceptions. Under the Model Penal Code approach, the jury should consider "the circumstances known to [the defendant]" in deciding whether to condemn the failure of perception. *Id.* at 241. In the case before us, in deciding whether to condemn the defendant's failure to perceive the risk that, if he drove in an intoxicated condition he would cause the death of another person, the jury should be allowed to consider "circumstances known to him" including his knowledge of how the consumption of alcohol would affect his ability to drive.

At least three of the drinking slogans displayed by the defendant in his van logically relate to his knowledge of how alcohol consumption would affect him, i.e., that it would (1) result in his loss of touch with reality ("Reality is for those who can't stay drunk"), (2) affect his ability to perceive ("The more I drink, the better you look"), and (3) alter his moods ("I only drink to make other people more interesting"). The jury could reasonably infer from his knowledge of the effects of alcohol consumption on his grasp of reality, his perceptions, and his moods that he also knew the effects of alcohol consumption on his ability to drive.

In deciding whether to condemn the defendant for his failure to perceive the risk that he would cause the death of another person if he drove in an intoxicated condition, the jury should have been permitted to consider the defendant's knowledge of how the consumption of alcohol might affect his perceptions thereby causing him to not perceive the risk. The three drinking slogans are probative of defendant's knowledge. With evidence before it of the defendant's knowledge of how the consumption of alcohol would affect his ability to perceive the risk he undertook when he drove while intoxicated, the jury could have concluded his failure of perception constituted a gross deviation from the reasonable person standard of care.

Before evidence can be excluded on the ground it is irrelevant, it is essential that it

appears so beyond doubt. *State v. O'Neal,* 718 S.W.2d 498, 503 (Mo. banc 1986), *cert. denied* 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987); *State v. Girardier,* 801 S.W.2d 793, 796 (Mo.App.1991). Not only am I not convinced beyond doubt that the three slogans specified were irrelevant, I believe they were relevant.

The relevance of the slogans is not the final consideration, however, because relevant evidence should be excluded if its admission would bring into the case matters that would cause prejudice wholly disproportionate to the value and usefulness of the evidence. *State v. Pollard,* 719 S.W.2d 38, 39 (Mo.App.1986), *State v. Diercks,* 674 S.W.2d 72, 78–79 (Mo.App.1984). However, the standard of review is clear. Whether such offered evidence is relevant and whether its probative value outweighs its inflammatory and prejudicial danger is for the trial court to decide, and its decision will not be disturbed absent an abuse of its discretion. *State v. Ray,* 637 S.W.2d 708, 709 (Mo. banc 1982); *State v. Gibson,* 636 S.W.2d 956, 958 (Mo. banc 1982); *State v. Easter,* 657 S.W.2d 52, 53 (Mo.App.1983). Moreover, a trial court may consider other evidence of guilt in deciding whether the proffered evidence is so prejudicial to the defendant that it should be excluded. *State v. Nolan,* 717 S.W.2d 573, 576–77 (Mo.App.1986). Here, the evidence against the defendant, exclusive of the slogans, was strong.

The remaining drinking slogans were not relevant to the offense and should not have been admitted into evidence. However, I believe no prejudice resulted to the defendant from their admission. In challenging the admissibility of evidence, a defendant must show not only error in the admission but also resulting prejudice. *State v. Reyes,* 740 S.W.2d 257, 263 (Mo.App.1987). Trial court error that would require reversal in a close case may be disregarded where evidence of guilt is strong. *State v. Burns,* 795 S.W.2d 527, 531 (Mo.App.1990). In such a case, the error is harmless. *Girardier,* 801 S.W.2d at 796. I believe that had the irrelevant drinking slogans been excluded, the other evidence submitted against the defendant was strong enough to convince the jury to find him guilty beyond a reasonable doubt of involuntary manslaughter. *See Burns,* 795 S.W.2d at 531; *State v. Rodriguez,* 581 S.W.2d 50, 52 (Mo.App.1979).

For these reasons, I would affirm the manslaughter conviction.