**STATE of Missouri, Plaintiff–Respondent,**

v.

**Tommy POGUE, Defendant–Appellant.**

**No. 18039.**

Missouri Court of Appeals,
Southern District.
Division One.

March 31, 1993.

Motion for Rehearing or Transfer to Supreme Court Denied April 15, 1993.

Application to Transfer Denied
May 25, 1993.

Ellen H. Flottman, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PARRISH, Chief Judge.

Tommy Pogue (defendant) was found guilty following a jury trial of involuntary manslaughter (Count I), § 565.024,[1] and armed criminal action (Count II), § 571.015. Defendant was convicted and sentenced in the Circuit Court of McDonald County following a change of venue from the Circuit Court of Newton County. He was sentenced to concurrent terms of imprisonment of three years on Count I and ten years on Count II. Defendant appeals both convictions. This court affirms Count I and reverses Count II.

On September 29, 1990, defendant was operating a motor vehicle, a Chevrolet pickup, that collided with another vehicle, a 1989 Oldsmobile Cutlass, operated by Sharon Hughes. Ms. Hughes died as a result of injuries she sustained in the accident.

The automobile accident occurred in Neosho, Missouri, in Newton County. There were two passengers with defendant in his pickup. He was driving south on Neosho Boulevard, a four-lane street. He was approaching the intersection of Neosho Boulevard and South Street. Two vehicles were stopped for a red light at that intersection. The two vehicles were side by side in the two southbound lanes. There was an unoccupied left-turn lane.

The traffic light at the intersection of Neosho Boulevard and South Street was red at the time defendant's pickup approached it. The pickup accelerated. It did not attempt to stop, but proceeded around the two vehicles that occupied the southbound lanes, through the left-turn lane, into the intersection.

Sharon Hughes' vehicle was proceeding through the intersection on South Street. Defendant's pickup struck her car at its passenger door. Following the impact, Ms. Hughes' car proceeded sideways through a ditch, onto a parking lot. It stopped 125 feet from the location where it was struck.

Defendant had consumed intoxicants prior to the accident. An ambulance attendant who assisted at the accident scene and who transported defendant and one of the passengers in the pickup truck smelled a strong odor of alcohol on defendant's breath. A blood sample taken from defendant three hours after the time of the accident disclosed .09% blood alcohol content. There was evidence at trial "that the blood ethanol level decreases at about 0.01 percent per hour. And if that is the case, then the value three hours before would have been 0.12 percent."

Defendant's first point on appeal is directed to Count II, the armed criminal action charge. Defendant asserts that the trial court erred by not granting his motion to dismiss Count II and by sentencing him

---

1. References to statutes are to RSMo 1986 unless otherwise stated.

for the offense of armed criminal action. Defendant asserts that a motor vehicle does not constitute a dangerous instrument for purposes of Missouri's armed criminal action statute, § 571.015, "unless it is used with the purpose of causing death or serious physical injury;" that the state thereby failed to prove he committed the offense of armed criminal action.

Section 571.015.1 states:

Except as provided in subsection 4 of this section,[2] any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the department of corrections and human resources for a term of not less than three years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of three calendar years.

This court has previously addressed an issue that is related to the one defendant presents by his first point on appeal. *See State v. Hernandez*, 815 S.W.2d 67 (Mo. App.1991). *Hernandez* involved charges of involuntary manslaughter and armed criminal action that arose from an automobile accident. The involuntary manslaughter charge in *Hernandez* was based upon § 565.024.1(2). It provides that:

A person commits the crime of involuntary manslaughter if he:

.      .      .      .      .

(2) While in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of any person.

This court stated:

By definition, armed criminal action incorporates all the elements of the underlying felony. An essential element of the underlying crime in [*Hernandez*] was that the defendant acted with criminal negligence. It is the least culpable of the mental states and lacks the moral implication of intent, knowledge and recklessness. Such an element will not support a conviction of armed criminal action.

*Hernandez*, 815 S.W.2d at 72 (citations and footnote omitted).[3] In *Hernandez*, this court did not "consider the question of whether a defendant convicted of involuntary manslaughter through reckless operation of an automobile could also be tried for armed criminal action for the same killing." *Id.* at n. 3. It is this issue that is raised by defendant's first point.

The involuntary manslaughter charge in this case, Count I, is based upon § 565.024.-1(1). It provides that:

A person commits the crime of involuntary manslaughter if he:

(1) Recklessly causes the death of another person; . . . .

The elements required to prove involuntary manslaughter pursuant to subparagraph (1) of § 565.024.1 are different from the elements required to prove involuntary manslaughter pursuant to subparagraph (2). The elements required by each subsection are:

---

2.  Subsection 4 of § 571.015 specifies certain felonies to which the offense of armed criminal action "shall not apply." The statutes cited involve various weapon-related offenses that were part of chapter 564 as it existed when § 571.015 was enacted in 1977. The involuntary manslaughter statute, § 565.024, was not enacted until 1983, effective October 1, 1984. *See* House Committee Substitute for Senate Committee Substitute for S.B. 276, 1983 Mo.Laws, p. 902.

3.  The armed criminal action statute, § 571.015, "does not set forth specifically a culpable mental state as an element of the offense." *Hernandez*, 815 S.W.2d at 71. However, § 562.021.2 states "if the definition of an offense does not expressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly or recklessly, but criminal negligence is not sufficient."

| Subsection (1) | Subsection (2) |
|---|---|
| —acts recklessly<br>—causes death of a person | —is intoxicated<br>—operates a motor vehicle<br>—while operating the vehicle, acts with criminal negligence<br>—causes the death of a person |

The amended information charged defendant with having "recklessly caused the death of Sharon Hughes by striking her with a motor vehicle, in that defendant was driving too fast for conditions; was under the influence of alcohol; failed to maintain a proper lookout and failed to stop for a red light." Count II then charged defendant with having "committed the felony of involuntary manslaughter, in that on or about September 29, 1990, ... the defendant recklessly caused the death of Sharon Hughes by striking her with a motor vehicle, in that defendant was driving too fast for conditions; was under the influence of alcohol; failed to maintain a proper lookout and failed to stop for a red light, and the defendant committed the foregoing felony of involuntary manslaughter by, with and through the use, assistance and aid of a dangerous instrument." The verdict-directing instruction in Count I required only that the jury find that defendant caused the death of Sharon Hughes by striking her with a motor vehicle and that defendant acted recklessly in that regard.[4]

In assessing the applicability of § 571.-015, the armed criminal action statute, its purpose, as applied to the facts of a particular case, must be understood. The purpose for which the state has attempted to use the armed criminal action statute in this case is to attempt to cumulatively punish defendant for the criminal conduct upon which his conviction for involuntary manslaughter was based. *See Missouri v.*

*Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). Section 571.-015.1 provides for enhanced punishment for certain felony offenses when they are committed "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon."

Although there was evidence presented at trial that defendant was intoxicated while driving the automobile that caused the accident in which Ms. Hughes was killed, and evidence that would have permitted a finding that while defendant operated his motor vehicle he acted with criminal negligence, the prosecuting attorney proceeded under the first subsection of the involuntary manslaughter statute, the subsection requiring proof of reckless conduct. Apparently, the prosecuting attorney chose to undertake the burden of proving a more culpable mental state in an effort to avoid the holding in *Hernandez* that a charge of involuntary manslaughter under subsection (2) would not support a charge of armed criminal action.

The question for resolve, under the facts of this case, is whether the motor vehicle that defendant was operating at the time of the collision of that vehicle with Sharon Hughes' vehicle was "a dangerous instrument." "Dangerous instrument" is defined in § 556.061(9), RSMo Supp.1990, as "any instrument, article or substance, which, *under the circumstances in which*

---

4. The verdict-directing instruction for Count I, the involuntary manslaughter charge, required the jury to find:

First, that on or about September 29, 1990, in the County of Newton, State of Missouri, the defendant caused the death of Sharon Hughes by striking her with a motor vehicle, and

Second, that defendant recklessly caused the death of Sharon Hughes,
then you will find the defendant guilty under Count I of involuntary manslaughter.

*it is used,* is readily capable of causing death or other serious physical injury." (Emphasis added.)

Defendant points to dictum in the concurring opinion in *State ex rel. Bulloch v. Seier,* 771 S.W.2d 71 (Mo. banc 1989) (Blackmar, J., concurring), that discussed an argument "that an instrument which produces death may be found to be dangerous if it is used in such a way as to cause death." *Id.* at 77. The concurring opinion assessed the argument:

> This, however, requires a showing of a purpose of so using the instrument.... [T]he instrument charged in the information is dangerous only if used with the purpose of causing death or bodily harm.

*Id.*

Defendant suggests that articles otherwise useable for utilitarian purposes "become 'dangerous instruments' under the armed criminal statute when they are used with a *purpose* to commit harm." Defendant suggests:

> It is this purpose, encompassing a mental state of knowingly or intentionally, which converts otherwise innocent articles into dangerous instruments. Under this analysis, reckless use of a motor vehicle resulting in an involuntary manslaughter cannot support a conviction for armed criminal action.

The state responds that the statutory definition of dangerous instrument is clear; that the definition, § 556.061(9), RSMo Supp.1990, does not include existence of a particular mental intent on the part of a user of an article in order for the article to be a dangerous instrument. "It merely requires that the instrument be readily capable of causing death or serious physical injury under the circumstances in which it is used."

The state's argument does not attach sufficient significance to the words, "under the circumstances in which it is used," that are part of the definition of "dangerous instrument" in § 556.061(9), RSMo Supp. 1990. The statute requires more than a showing that an article is readily capable of causing death or serious physical injury. It requires more than a showing that the

article was the instrument that produced the death of a person. Phrases are considered "in their plain or ordinary and usual sense." Section 1.090.

■ In determining the circumstances in which defendant used his automobile at the time in question, the user's intent and motive must be considered. This court holds that, in order for an automobile to become a dangerous instrument for purposes of § 571.015, the operator or user of the automobile must possess an intent and motive for the automobile to be an instrument of harm. As explained in *Reed v. U.S.,* 584 A.2d 585, 588–89 (D.C.App.1990):

> While certain objects are weapons by design, for instance, a handgun or a switch-blade, other objects become weapons only when there is some general intent for them to be a weapon. For instance, if an individual carries a bat to the baseball field for a game, the bat is certainly not a weapon. However, if the individual should swing the bat purposely at another, the bat then becomes a weapon. Similarly, a car driven for purposes of transportation is not a weapon, but a car driven with the purpose of injuring another definitely is a weapon.

Applying the rationale of *Reed* to § 571.015, an instrument not by design a weapon becomes a dangerous instrument when utilized with the purpose of injuring another. A utilitarian instrument becomes a dangerous instrument when circumstances in which it is used demonstrate an intent and motive to cause death or serious harm to a person.

■ Mere recklessness in the operation of an automobile does not give rise to armed criminal action. There was no evidence nor allegation that defendant intended to drive his motor vehicle, the pickup, so as to cause it to crash into the victim's automobile or that defendant intended to drive the pickup so as to cause the victim's (or any other person's) death. Defendant's first point is well-taken. The trial court erred by not granting defendant's motion to dismiss in that a motor vehicle does not constitute a dangerous instrument for pur-

poses of § 571.015, absent its being used with a purpose to cause death or serious injury. The first point is granted.

Defendant's second point is directed to the verdict-directing instruction used in Count II, the armed criminal action count. By reason of granting defendant's first point, the second point is moot.

The third point is directed to the giving of Instruction No. 4, the reasonable doubt instruction in the format patterned by MAI–CR 3d 302.04. That point is denied for the reasons given in *State v. Bogard,* 836 S.W.2d 87, 89 (Mo.App.1992).[5]

The judgment of conviction and sentence in Count I, the involuntary manslaughter count, is affirmed. The judgment of conviction and sentence in Count II, the armed criminal action count, is reversed.

CROW, P.J., and SHRUM, J., concur.