STATE of Missouri, Respondent,

v.

Jackson L. BURNS, Jr., Appellant.

WD 41781.

Missouri Court of Appeals,
Western District.

July 24, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 28, 1990.

Application to Transfer Denied
Oct. 16, 1990.

F.A. White, Jr., McFadin, White and Fincham, Kansas City, for appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and KENNEDY and ULRICH, JJ.

ULRICH, Judge.

Jackson L. Burns, Jr., appeals his conviction by a jury of selling methamphetamine, a schedule II controlled substance (§ 195.-020).[1] He was sentenced to twelve years imprisonment (§ 195.200.1(4)) (repealed

---

1. All references to Missouri statutes are to Revised Statutes of Missouri 1986 unless otherwise

1989). The judgment of conviction is affirmed.

Mr. Burns claims four points of error. He contends that (1) the evidence did not support the crime charged, (2) the evidence was insufficient to support the jury's verdict, and the court erred (3) by permitting law enforcement witnesses to testify about prior dealings they had with the confidential informant, who did not testify, and (4) in permitting Deputy Roberts to testify about the conversation she heard between the informant and Mr. Burns during the drug transaction.

Deputy Sheriff Sherry Roberts, Clay County Sheriff's Department, was an undercover agent for the Narcotics Squad of the Clay County Investigative Squad. On June 18, 1987, she met a confidential informant at an apartment with other law enforcement officers. Deputy Roberts obtained $340 from Sergeant David Ross of the Excelsior Springs Police Department also working with the Clay County Investigative Squad. The money was obtained to purchase one-eighth ounce of methamphetamine that the confidential informant had arranged to purchase from an acquaintance. The purchase was to occur at Shoney's Restaurant in North Kansas City, Missouri.

Agent Carl Hicks of the United States Drug Enforcement Administration, working with the Clay County Investigative Squad, was also at the apartment. Prior to leaving the apartment, agent Hicks searched the confidential informant for weapons, drugs, and large amounts of money. Apparently none were found. Agent Hicks drove to Shoney's Restaurant with Detective David Ross and Robert Boydston, also of the Excelsior Springs Police Department, where they were to surveil the anticipated drug purchase. Upon arriving at Shoney's Restaurant, agent Hicks observed the person whom he later learned to be Mr. Burns and another individual on motorcycles in the parking lot

stated.

adjacent to the restaurant. The two men entered the restaurant.

Deputy Roberts departed the apartment and drove with the confidential informant directly to Shoney's Restaurant. Upon arrival, Deputy Roberts handed the informant the $340 that she had received in the apartment, and they entered the restaurant together. They approached Mr. Burns and the other person with him and sat at the same table with them. The informant and Mr. Burns talked about exchanging cocaine for methamphetamine. Mr. Burns stated that he was going to Albuquerque and that he would do "business" when he returned, which Deputy Roberts understood to mean "narcotics business." The informant then removed money from his pocket and handed it to Mr. Burns under the table. Mr. Burns pointed to a crumpled cigarette pack on the table without comment. The informant picked up the cigarette package, opened it, and examined the contents as he held the package under the table. The informant placed the package in his pocket, Deputy Roberts and the informant stood up and left the table proceeding to the front door of the restaurant. Just prior to exiting the restaurant, the informant gave Deputy Roberts a small plastic envelope. After departing the restaurant, Deputy Roberts and the informant immediately returned to the apartment together. Shortly after Deputy Roberts and the informant departed the restaurant's parking lot, Mr. Burns and his companion exited the restaurant and drove away on their motorcycles.

After the transaction, the law enforcement personnel and the informant returned to the apartment. Upon returning to the apartment, Deputy Roberts gave the package she had obtained from the informant to Sergeant Ross. The substance in the package was later identified as methamphetamine. Agent Hicks, having returned to the apartment also, again searched the confidential informant for weapons, drugs, and money.

■ Mr. Burns contends as point (1) that the evidence does not prove the crime charged because the indictment alleges he sold methamphetamine to "S. Roberts,"

and the evidence did not prove a direct sale to S. Roberts. To be guilty of the crime charged, he says, the evidence must prove that he received money directly from Deputy Roberts in exchange for methamphetamine that he gave directly to her.

■ The charge in an indictment or information alleging the sale of a controlled substance to a specific person can be treated as surplusage if the proof showed that the sale was to another person not named, since the identity of the buyer is not an essential element of the offense. *State v. Lemon,* 504 S.W.2d 676, 681 (Mo. App.1973). However, ordinarily the submission must conform to facts proved, and the jury instructions in criminal cases must be based upon the evidence adduced. *Id.* at 681. The verdict-directing instruction, Instruction No. 5, provided that the jury, in order to find Mr. Burns guilty, had to find that he sold methamphetamine to S. Roberts. The indictment and the instructions were not at variance in identifying the person to whom Mr. Burns sold methamphetamine.

Deputy Roberts was acting in concert with a paid confidential informant. The informant received methamphetamine from Mr. Burns as an agent of the Clay County Drug Task Force and Deputy Roberts. The substance purchased from Mr. Burns was purchased in behalf of the drug task force and Deputy Roberts who participated in the purchase. The substance purchased was given to her by the informant even before she and the informant left the restaurant. The crime charged and the jury instructions conformed with the evidence. Point (1) is denied.

■ Mr. Burns' second point, whether the evidence was sufficient to support the jury's verdict, is considered. When reviewing the sufficiency of the evidence to support a verdict, this court considers all substantial evidence of facts and inferences readily drawn from such evidence in light most favorable to the verdict and rejects all evidence and inferences to the contrary. *State v. Kuzma,* 751 S.W.2d 54, 57 (Mo. App.1987). Substantial evidence is evidence from which the trier of fact reason-

ably can find the issue in harmony with the evidence. *Id.* at 58. This court does not assess the credibility of witnesses, nor does it assign weight to their testimony. *State v. Sherman,* 637 S.W.2d 704, 707 (Mo. banc 1982).

The evidence disclosed that Mr. Burns received $340 from the confidential informant for which he provided methamphetamine. The confidential informant picked up the controlled substance from the table after Mr. Burns received the money and gestured that the substance being purchased was in the cigarette package on the table. The substance was later tested by the Missouri Highway Patrol laboratory and confirmed to be methamphetamine. While seated at the restaurant table, the confidential informant and the appellant, spoke of exchanging cocaine for methamphetamine. Mr. Burns stated that he was going to Albuquerque and that he would conduct further drug business upon his return. Sufficient evidence was presented to support the verdict. Mr. Burns contends that evidence adduced proves the state's case to be flawed. His argument that the informant was a paid witness who had participated in thirty drug purchases for money in a three-month period, that the state did not prove what happened to the "cigarette package" containing the plastic bag of methamphetamine, and that Deputy Roberts failed to testify as to the exact amount of money given by the confidential informant to Mr. Burns addressed the weight of the evidence to be given by the trier of fact, a subject not considered by this court. Point (2) is denied.

■ Mr. Burns contends as point (3) that the court erred by permitting a law enforcement officer to testify about prior dealings they had with the confidential informant. Over Mr. Burns' objection, agent Hicks of the Drug Enforcement Administration, Department of Justice, was permitted to testify on direct examination as follows:

Q  In your work as a special agent for the Drug Enforcement Agency, could you briefly describe how names of possible drug users or sellers are developed?

MR. WHITE: I'm going to object to that, Your Honor, as being irrelevant.

THE COURT: Overruled. The jury should be aware of the fact the procedure he used does not necessarily refer to this Defendant. Proceed.

A  As we're meeting with confidential informants, we will ask the confidential informant about his knowledge of drug dealers in the area or any area, we will ask for names, telephone numbers, and addresses, and so forth of the drug dealers. That way we can plan our future investigations and target certain individuals that we want to purchase narcotics from.

Q  Is that the normal course of developing such leads?

A  Yes, it is.

Q  Through confidential informants?

A  Yes, my work is primarily involved with the utilization of confidential informants. The reason is that confidential informants themselves normally run with these drug dealers, they've normally known them for some time, and their information to us about the drug dealers aids us greatly in developing an investigation against the drug dealers.

Q  Could you tell us today what the source was for identifying the name of Jackson L. Burns, did it follow that same procedure?

A  Yes—

MR. WHITE: Your Honor, I would renew my objection. May we approach the bench?

. . . .

Q  Agent Hicks, would you tell us how you got the name of Jackson L. Burns?

A  Yes. I received the name of Jack, this was given to me by the informant. The informant gave me the name of Jack—

. . . .

Q  The particular informant who gave you that information, had you done business or transacted business with that individual before?

A  Yes, I had.

Q  Could you give us an idea of the number of times or information that you received from the informant that gave you the name of Jack Burns?

MR. WHITE: Objection, Your Honor, it's irrelevant.

MR. KLOPFENSTEIN: Your Honor, may we approach?

THE COURT: The objection will be overruled. You may answer.

A  This particular informant gave me information which led to the arrest of over thirty individuals in the Clay County, Platte County, and Jackson County areas during a period of about April, May, June, and July of 1987. So for about a four month period we arrested over thirty individuals due to information provided by this informant.

Q  Through that four month period, did you ever have an opportunity to verify that information provided by the informant?

A  Yes, I did.

....

Q  Agent Hicks, would you say the information provided by this informant through that four month period was reliable?

A  Yes, it was.

■  Evidence is relevant and therefore admissible if it logically tends to prove or disprove a fact in issue or if it corroborates other material evidence. *State v. Cotton,* 724 S.W.2d 649, 652 (Mo.App.1986); *see also, State v. Hardy,* 735 S.W.2d 153 (Mo.App.1987); *State v. Paynes,* 697 S.W.2d 200 (Mo.App.1985). Questions respecting the relevance and admissibility of evidence are within the trial court's discretion and will not be overturned on appeal absent abuse of discretion. *State v. Atkins,* 697 S.W.2d 226, 227 (Mo.App.1985); *State v. Hannah,* 691 S.W.2d 345, 347 (Mo.App.1985). In determining the admissibility of evidence, its probative value must not be outweighed by its tendency to create undue prejudice in the minds of the jury. *State v. Taylor,* 663 S.W.2d 235, 240 (Mo. banc 1984). Even if evidence is relevant, it should be excluded if it introduces matters which cause prejudice wholly disproportionate to the value of the offered evidence. *State v. Pollard,* 719 S.W.2d 38, 41 (Mo. App.1986).

The state's attorney asked Mr. Hicks to "describe how names of possible drug users or sellers are developed." Mr. Burns' objection to the relevancy of the question was overruled, and Mr. Hicks stated that confidential informants are asked about "drug deals in the area." He said that confidential informants "normally run with these drug dealers, ... and their information to us about the drug dealers aids us greatly in developing an investigation against the drug dealers." Despite the fact that the confidential informant did not testify, agent Hicks stated that the information provided to him over a four-month period by the confidential informant was reliable and led to the arrest of over thirty individuals in three counties.

Agent Hicks' testimony implied that Mr. Burns was a drug dealer because the confidential informant "ran with him," and the information supplied by the informant prompting the drug investigation of Mr. Burns was accurate because the informant had provided such information about thirty other people within four months that led to their arrest.

■  The testimony was not relevant to the facts of the occurrence for which Mr. Burns was prosecuted. The testimony should not have been admitted, and the trial court abused its discretion by permitting its introduction over Mr. Burns' objection. However, to prevail, Mr. Burns must prove both error in the admission of evidence and resulting prejudice. *State v. Reyes,* 740 S.W.2d 257, 263 (Mo.App.1987). Where evidence of guilt is strong, error, which in a close case would require reversal, may be disregarded. *Id.* The evidence presented against Mr. Burns was sufficient to convince this court that even had the disputed evidence not been introduced, he would have been found guilty of the offense beyond a reasonable doubt. *State v. Rodriguez,* 581 S.W.2d 50, 52 (Mo.App. 1979). Admission of the improper testimo-

ny was harmless beyond a reasonable doubt. *Id.*

The final point considered is whether Deputy Roberts' testimony about the conversation between the informant and Mr. Burns in her presence during the methamphetamine sale was erroneously admitted over Mr. Burns' objection and prejudicial. Deputy Roberts entered the restaurant with the informant, was seated at the table where the transaction occurred during the entire event and departed with the informant. The informant paid money to Mr. Burns and received methamphetamine in Deputy Roberts' presence. The conversation between the informant and Mr. Burns during the sale was a part of the transaction and relevant. It was relevant to the circumstances surrounding Deputy Roberts' actions and was admissible as part of the res gestae of the crime. *State v. Weatherspoon,* 728 S.W.2d 267, 273 (Mo. App.1987).

The judgment of conviction is affirmed.

All concur.