STATE of Missouri, Respondent,

v.

Tina S. McCLANAHAN, Appellant.

No. WD 51634.

Missouri Court of Appeals,
Western District,
En Banc.

Aug. 26, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 30, 1997.

Application to Transfer Denied
Nov. 25, 1997.

Mary Flanagan–Dean, Asst. Public Defender, Hannibal, for Appellant.

Scott A. Hayes, Asst. Pros. Atty., Randolph County, Moberly, for Respondent.

Before ULRICH, C.J., and
LOWENSTEIN, BERREY,
BRECKENRIDGE, HANNA, SPINDEN,
SMART, ELLIS, LAURA DENVIR STITH,
EDWIN H. SMITH and HOWARD, JJ.

HANNA, Judge.

The defendant, Tina S. McClanahan, appeals from her conviction, by a jury, of interference with custody, § 565.150, RSMo 1994, and sentence of 90 days in jail. The defendant does not challenge the sufficiency of the evidence. The appeal focuses on three questions asked by the state concerning the defendant's treatment for drug abuse, prior arrests, and her attempt to terminate her parental rights. She complains that the

questions portrayed her as a person of low moral character, resulting in a guilty verdict and an "excessive 90 days in jail." She requests a reversal of her conviction and remand of the case for a new trial.

On October 19, 1993, Sasha Clarkson was made a ward of the Randolph County Juvenile Court. The court placed physical and legal custody of Sasha with her father, Robert Clarkson. Pursuant to this order, the defendant was granted one hour of supervised visitation each week in the Moberly office of the Division of Family Services. Although it is subject to dispute, the defendant claims that she had not received visitation during the preceding six months. She had filed two contempt motions with the court against Mr. Clarkson and the Division of Family Services regarding her visitation rights.

On November 16, 1994, the defendant picked up Sasha at the Macon Elementary School. She requested supervised visitation from the Randolph County Juvenile Office and the Department of Family Services. Apparently she was unsuccessful. She took Sasha from Macon to her home in Moberly. That evening, the police went to the defendant's home to execute a 24–hour protective custody order for Sasha. She responded by yelling obscenities at the police and refused to relinquish custody of Sasha. Eventually the police convinced her to accompany them to the police station with her daughter. At the station, she still refused to voluntarily return Sasha. The police sought assistance from the Randolph County juvenile officer and the DFS worker. They were unable to help. After approximately 1½ hours of unsuccessful negotiations, four police officers physically removed the child from the defendant's custody.

Two of the three questions, those regarding her prior arrests and her offer to terminate her parental rights, may be considered together. The defendant states in her point relied on that "the state also asked other improper questions regarding prior arrests, and her attempts to terminate her parental rights ...," which denied her a fair trial.

 When the questions were asked about the defendant's prior arrests [1] and her offer to terminate her parental rights, counsel objected and the court sustained the objections. Admittedly, questions, without answers, may be prejudicial. *State v. Dunn*, 577 S.W.2d 649, 651 (Mo. banc 1979). However, the general precept applies that, when an improper question is asked but not answered, no prejudicial error occurs. *State v. Gilmore*, 681 S.W.2d 934, 942 (Mo. banc 1984). In those situations in which the question alone may, in the opinion of counsel, create an unfavorable consequence, counsel may ask for further relief. In this case, there was no request for any other relief after the court's ruling in her favor. When a defendant's objection to a question is sustained and there is no further request for relief or motion directed to the court, nothing is preserved for review on appeal. *State v. Harvey*, 766 S.W.2d 175, 177 (Mo.App.1989).[2] Additionally, the defendant's after trial motion raised only two issues, the sufficiency of the evidence to sustain the conviction and the court's ruling on the state's question about her drug treatment. She did not raise any claim of error regarding the unanswered questions. In order to preserve allegations of error for appellate review, they must be included in the motion for new trial. Rule 29.11(d); *State v. Watts*, 813 S.W.2d 940, 943 (Mo.App.1991).

1. The defendant's answer that she had been arrested on six different occasions interrupted her counsel's objection and was given before the court's ruling. After the court sustained the objection, the prosecutor did not pursue that line of questioning. Later in her testimony, the defendant again volunteered in a non-responsive answer that she had been arrested for interfering with custody related to the Division of Family Services.

2. We expect that the jury will abide by the court's written instruction, MAI–CR 3d 302.02, which instructs the jury that "[y]ou must not assume as true any fact solely because it is included in or suggested by a question asked a witness. A question is not evidence, and may be considered only as it supplies meaning to the answer." Further, the jury was instructed that "if the Court sustains an objection to a question, you will disregard the entire question and you should not speculate as to what the answer of the witness might have been."

Finally, it is incumbent upon the defendant to identify in what manner the trial court erred as it relates to the two unanswered questions. The defendant has failed to comply with Rule 30.06(d) by setting forth "what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous,...." She complains that "the state asked other improper questions regarding prior arrests and her attempts to terminate her parental rights...."

■ The scope of the issue on appeal is determined by the point relied on. *State v. Talbert,* 873 S.W.2d 321, 323 (Mo.App.1994). The defendant has not identified, either in the point relied on or in the argument portion of the brief, what actions or rulings of the trial court are sought to be reviewed or what relief the trial court failed to grant or should have taken. *See State v. Nenninger,* 872 S.W.2d 589, 589, (Mo.App.1994), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed.2d 503 (1994). The defendant received all of the relief she requested when the court sustained her objection, and she has failed to preserve the issue of the unanswered questions at the time of trial, in her after-trial motion, and on appeal.

■ More troublesome is the prosecutor's question concerning the defendant's treatment for drug abuse. The defendant's objection was overruled. Drug treatment generally does not go to any element of the crime that the state is obligated to prove. The basis for its admission was to attack the witness's credibility. The defendant maintains that her prior treatment for drug abuse was irrelevant and was introduced solely to show that she was a person of low moral character.

The testimony about the defendant's drug treatment came about in the following manner. The state asked the defendant about her prior convictions. She testified that she had only one conviction, which had occurred approximately 13 years earlier. The state then asked the defendant if she had pleaded guilty in 1995 to driving under the influence of narcotics in Iowa. The defendant stated, "that was kind of a screwed up deal." She then stated, "I signed a paper, but I couldn't

make it to court ... they told me that the charges would be dropped...." She was asked if she had a copy of the lab report concerning the DUI, and she answered, "as far as I know, nothing has come back in the lab report except for nicotine and caffeine." The state then asked the defendant if she had ever received treatment for drug abuse. Counsel objected on relevancy grounds. The court overruled the objection and allowed the answer, which included three treatment programs.

■ "Evidence is relevant if it tends to prove or disprove a fact in issue, or if it corroborates evidence that is relevant and bears on a principal issue." *State v. Bounds,* 857 S.W.2d 474, 477 (Mo.App.1993). The trial court is vested with broad discretion in ruling on questions of relevancy, and the appellate court should not interfere with the trial court's ruling in the absence of a clear showing of an abuse of discretion. *State v. Brown,* 718 S.W.2d 493, 493–94 (Mo. banc 1986).

■ If a defendant chooses to testify, prior convictions, including pleas of guilty, may be exposed and considered by the jury to determine her credibility. *State v. Light,* 871 S.W.2d 59, 62–63 (Mo.App.1994); § 491.050, RSMo 1994. It is unclear from the record whether the defendant's prior treatment for drug abuse had any connection to her alleged conviction in Iowa. However, given the purpose of such evidence, the details of the admitted prior convictions are unnecessary. *State v. Silcox,* 694 S.W.2d 755, 757 (Mo.App.1985). When the state questions a defendant about prior convictions, it is permitted to elicit the nature, dates, and places of the occurrence, as well as the sentences resulting therefrom. *Light,* 871 S.W.2d at 63. "In literary terms who, what, when and where are in order but why and how are not." *Id.* Even if the state's question concerning her prior drug treatment was the result of this alleged conviction, the question was beyond the scope of permissible inquiry.

The state contends that the defendant asserted her good character through her testimony set forth above. However, first, it was

the state that asked about her prior conviction. Second, we do not agree that it is an assertion of good character that one has not been convicted of a crime in 13 years or that the defendant thought the DUI charges would be dropped. The evidence of her drug treatment was irrelevant, and the trial court erred in permitting the state to ask about it. The question now becomes whether the drug treatment testimony was so prejudicial as to warrant a reversal of the conviction. *See State v. Debler,* 856 S.W.2d 641, 649 (Mo. banc 1993).[3]

The defendant was charged with interference with custody, § 565.150, RSMo 1994, which requires a showing that a person, "knowing that he has no legal right to do so, ... takes or entices from legal custody any person entrusted by order of a court to the custody of another person or institution."

The evidence of the defendant's guilt was as follows. A court previously had ruled that the defendant was not a fit custodian of her five year old daughter in an unsupervised setting and, therefore, had entrusted the physical and legal custody of Sasha with her father. The defendant testified that, although the court had awarded her only one hour of supervised visitation per week, she took Sasha off of the school bus and drove her to her home in Moberly without permission or supervision. When the authorities demanded the child's return, her defiance of the lawful court order continued, in the presence of her daughter, requiring four police officers to wrestle the daughter from her custody. The defendant's continual defiance of a lawful court order and its lawful authori-

ties, in her child's presence, closed any question of her guilt.

█ When the body of evidence establishing the defendant's *guilt* is overwhelming, the error is rendered harmless. *State v. Leisure,* 796 S.W.2d 875, 880 (Mo. banc 1990) (emphasis added).[4] The presumption of prejudice from the erroneous admission of evidence may be overcome when the evidence of *guilt* is so overwhelming as to eliminate any reasonable doubt that the defendant would have been found guilty even without the erroneously admitted evidence. *State v. Troupe,* 863 S.W.2d 633, 636 (Mo.App.1993). It also has been put that error, which in a close case might call for reversal, may be disregarded as harmless when the evidence of guilt is strong. *State v. Degraffenreid,* 477 S.W.2d 57, 65 (Mo. banc 1972); *State v. Cook,* 628 S.W.2d 657, 661–62 (Mo. banc 1982); *State v. Burns,* 795 S.W.2d 527, 531 (Mo.App. 1990).

Although the evidence of drug treatment was improper, the presumption of prejudice from the erroneous admission of such evidence is overcome by the evidence of the defendant's guilt. Further, we find no other reference to drug treatment by the prosecuting attorney at any point during the trial, including closing argument. The unchallenged evidence of guilt renders the error harmless.

In point two, the defendant asserts that the jury's assessment of punishment of 90 days was affected by the evidence of her drug abuse treatment and the questions concerning her prior arrests and termination of her parental rights.[5] The punishment for

---

**3.** We do not condone the prosecutor's overzealous questioning on clearly irrelevant matters. Obvious irrelevant and perilous questions concerning termination of parental rights, arrests, and drug treatment cast suspicion on the questioner's motivation. Such improprieties will assure close appellate scrutiny. In *State v. Hernandez,* 815 S.W.2d 67 (Mo.App.1991), the appellate court reversed and remanded for a new trial because of the admission of improper evidence, which was exacerbated by the prosecutor's fixation on the evidence during closing argument. In *Hernandez,* 815 S.W.2d at 71, The court stated:

It is unfortunate when prosecuting officials with otherwise strong evidence in support of a

conviction choose to go beyond the legitimate evidence that is available to them and pursue other inflammatory and irrelevant triviality in quest of conviction. When this occurs, the result of appellate review is assured.

**4.** An exception is when the trial is bifurcated between guilt and punishment such as in death penalty cases. *State v. Shurn,* 866 S.W.2d 447 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

**5.** Our review is limited to the drug abuse treatment evidence. We have held that there is nothing to review regarding the questions about prior arrests or termination of parental rights.

violating § 565.150, RSMo 1994, interference with custody, a class A misdemeanor, is not to exceed one year in the county jail. § 558.011, RSMo 1994.

■ The issue of an excessive sentence first should be addressed to the sound discretion of the trial court. In this case, it was not. As mentioned, the only issues preserved in the defendant's post trial motion were the sufficiency of the evidence, which was not raised on appeal, and the court's error in allowing the testimony about the defendant's drug abuse treatment. The latter error was not raised in the context of an excessive sentence.

■ The court derives its authority to assess, increase, or reduce punishment from statute, § 557.036, RSMo 1994, and the Missouri Supreme Court Rules 29.02, 29.03, 29.04, 29.05, and 29.06. *State v. Lewis*, 633 S.W.2d 110, 118 (Mo.App.1982). There is no constitutional right to have a jury determine punishment. *State v. Weimer*, 658 S.W.2d 77, 79 (Mo.App.1983). The constitutional right to a trial by a jury in a felony case does not extend to jury sentencing. U.S. CONST. amend. VI; *State v. Cline*, 808 S.W.2d 822, 826 (Mo. banc 1991); *State v. Griffin*, 756 S.W.2d 475, 487 (Mo. banc 1988), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989).

■ We have not found authority permitting any appellate court review of a jury *sentence* because it was affected by inadmissible evidence, except possibly *State v. Hernandez*, 815 S.W.2d 67 (Mo.App.1991). In *Hernandez*, the court found that the evidence of guilt was overwhelming but reversed the conviction because of the prejudicial effect of the inadmissible evidence. The implication of its holding is that the error so contaminated the jury's verdict that retrial was the appropriate result. Other than the *Hernandez* case, we are referred to no authority, and we find none, that supports the proposition that a reviewing court may reverse a conviction because of the effect that the inadmissi-

ble evidence may have had on the jury's assessment of punishment.

On the other hand, *Degraffenreid, Cook, Brown, Leisure, Troupe,* and *Burns,*[6] represent a long line of cases that have evaluated the prejudicial effect of inadmissible evidence on the jury's determination of guilt, not punishment. Missouri law does not contemplate an unduly subjective standard of review where an appellate court may reverse a conviction because of the effect of inadmissible evidence on the jury's assessment of punishment. However, these cases do not preclude court review of a jury's determination of punishment. A review of punishment may be accomplished even though it was held that the inadmissible evidence did not affect the jury's determination of guilt. The review then may be directed to a reduction of the sentence, not reversal of the conviction.

■ In the first instance, it is the jury's responsibility to assess punishment. In any event, the trial court is statutorily required to decide the extent of the punishment in all cases in which the jury has assessed the sentence. Section 557.036.1, RSMo 1994, directs the trial court upon a guilty verdict to "decide the extent or duration of sentence or other disposition to be imposed under all the circumstances ... and render judgment accordingly." The court's authority is limited in that the term of imprisonment imposed by the court cannot exceed the term declared by the jury. In other words, it is the primary function of the jury to set the maximum punishment. *State v. Maxson*, 641 S.W.2d 162, 163, (Mo.App.1982). Only when the defendant is found to be an offender under § 558.016, RSMo (1994), or the term assessed by the jury is less than the minimum range of punishment may the court increase the term of imprisonment. *Id.* It is the function of the jury to assess punishment subject to the responsibility of the trial court to reduce the punishment, "if in the opinion of the trial court *the conviction is proper* but the punishment assessed is greater than, under the circumstances of the case, ought to

**6.** *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972); *State v. Cook*, 628 S.W.2d 657 (Mo. banc 1982); *State v. Brown*, 718 S.W.2d 493 (Mo. banc 1986); *State v. Leisure*, 796 S.W.2d 875 (Mo. banc 1990); *State v. Troupe*, 863 S.W.2d 633 (Mo.App.1993); *State v. Burns*, 795 S.W.2d 527 (Mo.App.1990).

be inflicted." *State v. Caffey*, 365 S.W.2d 607, 610 (Mo.1963) (emphasis added); S.Ct. Rule 29.05. Simply put, the trial court makes its own assessment of punishment and will enter a sentence consistent with the facts of the case, which may not exceed the punishment issued by the jury. Expectedly, the vast majority of sentences imposed by the trial court are the same as the jury's sentence. Therefore, we are not prepared to accept the dissent's opinion that, simply because the trial court's sentence was the same as that imposed by the jury, the trial court did not review the sentence assessed by the jury.

▆▆▆ Additionally, sentences that, in the opinion of the defendant, are excessive may be reviewed by the trial court when the defendant requests in an after-trial motion to reduce the sentence imposed. *State v. Johnson*, 549 S.W.2d 348, 351 (Mo.App.1977); Rule 29.11(d). In those cases, an appellate court has authority to reduce the sentence only upon a showing of an abuse of discretion appearing clearly in the record. *State v. Agee*, 474 S.W.2d 817, 821 (Mo.1971); *State v. Morris*, 661 S.W.2d 84, 85 (Mo.App.1983). The appellate court will not interfere with the trial court's decision absent a showing that "passion and prejudice so clearly appears from the record that the appellate court can confidently say the trial court abused its discretion by declining to reduce the punishment." *Johnson*, 549 S.W.2d at 351; *State v. Mucie*, 448 S.W.2d 879, 889 (Mo.1970), *cert. denied*, 398 U.S. 938, 90 S.Ct. 1842, 26 L.Ed.2d 271 (1970). However, the issue was not raised in any form before the trial court, and no request to reduce the sentence has been made here. Our review here of the inadmissible evidence is limited to its effect on the jury's determination of guilt.

Judgment affirmed.

LOWENSTEIN, ULRICH, SPINDEN and HOWARD, JJ., concur with majority opinion.

SMART, J., files separate concurring opinion.

EDWIN H. SMITH, J., files separate dissenting opinion.

BERREY, BRECKENRIDGE, ELLIS and LAURA DENVIR STITH, JJ., join in dissenting opinion.

SMART, Judge, concurring.

I agree with the analysis of the principal opinion as it relates to our review of the issues raised. I write separately to add emphasis to the proposition that it is improper for a reviewing court to require the state to justify a sentence when there was no motion in the trial court directed to the sentence, either before or after the trial judge sentenced the defendant.

The dissent is willing to assume that, had there been a motion related to sentence, the trial court would have automatically rejected the argument that the jury's sentence recommendation may have been influenced by improper evidence. I fail to see that we are entitled to make that assumption.

In the midst of the trial, evidentiary rulings are generally made quickly. Decisions are frequently made on terse objections unsubstantiated by any authority. After a trial, counsel has an opportunity to research an issue, obtain authority, and prepare a thorough analysis of the issue. The trial court, if persuaded, is able to grant relief. Here, counsel filed a motion for new trial, arguing that the court erred in allowing evidence of drug abuse as it might have affected the conviction. As noted in the principal opinion, there was no assertion that such evidence may have influenced the sentence nor was there any request for reduction of sentence. It is possible that counsel did not believe that the inadmissible evidence had any effect on sentence. It is also possible that the trial court actually agreed with the proposition that evidence of drug abuse should not have been admitted, but denied the motion for new trial on the ground that the error *had no effect on the verdict of guilt*. At no time was the court asked to consider whether the inadmissible evidence may have influenced the jury's sentence recommendation.

It is a rare case in which a reviewing court should consider an argument not made to the trial court. Rule 29.11(d). Such an argument may be considered under Rule 30.20

when it is a "plain error" affecting substantial rights and the injustice or miscarriage of justice is manifest. In this case, appellant does not argue that any injustice with regard to the sentence is manifest. Appellant offers no discussion as to why, without prosecutorial error, she would have received a much lighter sentence. Rather, appellant argues simply that the burden is on the state to show beyond a reasonable doubt that the sentence was not affected by the improper evidence.

There is little authority for an appellate court to review a sentence merely because improper evidence was admitted, where the issue has not been preserved as to the sentence. *State v. Hernandez,* 815 S.W.2d 67 (Mo.App.1991) is of questionable value as authority. In that case, the court chose to order a new trial in an involuntary manslaughter prosecution after inflammatory inadmissible evidence was used by the prosecution to argue for a maximum sentence. I believe a fair reading of that case suggests that the court found the admission of the inflammatory evidence, and the use of that evidence, was prejudicial both as to conviction and as to sentence, and ordered a new trial. It is not clear that in *Hernandez* the prejudice went only to the sentence. Nowhere in the opinion of the court in *Hernandez* is there any conclusion by the court that the evidence of guilt was overwhelming,[1] or that the defendant admitted guilt, or any conclusion that the error was harmless as to conviction. It is true that, in looking at the issue of prejudice, the court focused on the prosecutor's argument for a maximum sentence. It is likely, however, that the court believed that the same argument also hindered impartial and reasonable consideration of the evidence as to conviction. Thus, the reviewing court's order of a new trial may well have been based upon the court's belief

that the improper evidence may have affected the jury's finding of guilt of involuntary manslaughter, as well as the sentence. In contrast, in the case before us, it is clear that the improper evidence was harmless as to conviction. Further, unlike the obviously inflammatory argument in *Hernandez,* the prosecution's closing argument in this case was extremely matter-of-fact, and not inflammatory. There was no reference to drug abuse or any other improper matters. The only reference to punishment ("ninety days in jail is not too much to ask for this offense") was made without any supporting argumentation.

It is true that, as an abstract proposition, ninety days in jail seems an unusually harsh sentence in the case of a mother interfering with custodial rights. However, we are not the most competent judges of the appropriate sentence in the particular case. We are not told why the court in the domestic matter severely restricted defendant's visitation rights. There was evidently no appeal of the custody decision, and the facts of the custody case were not part of the record in this case. I am not willing to order a new trial on the mere supposition that the trial judge gave no thought to the fairness of the sentence.[2] I also do not see that it is manifest that the jurors, two of whom were already acquainted with the defendant before trial and all of whom observed her testimony at trial, allowed their judgment to be highjacked by prosecutorial improbity.

It is always possible that some inadmissible evidence may have influenced a jury's recommendation of sentence. But unless the trial court had an opportunity to address the issue, or the injustice is manifest, it is improper to presume prejudice by shifting the burden to the state to disprove prejudice.

1. The opinion of the court recites the evidence in the light most favorable to the verdict, so we do not know what evidence was presented in behalf of the defendant. *Id.* at 69. The opinion of Shrum, J., concurring in part and dissenting in part, indicates that Judge Shrum viewed the evidence of guilt as "strong." *Id.* at 74. His view of the evidence of guilt was, in fact, part of the reason for his dissent from the reversal of the conviction of involuntary manslaughter. *Id.*

2. There are many things we do not know about the defendant. The record suggests that Ms. McClanahan may suffer from emotional disturbance and has had various conflicts with authority. *E.g., State v. McClanahan,* 930 S.W.2d 489 (Mo.App.1996). Whether or not jail time is an appropriate sanction for Ms. McClanahan is a difficult question, one which would not necessarily be resolved by ordering a new trial.

EDWIN H. SMITH, Judge, dissenting.

I respectfully dissent.

I agree with the majority that it was error for the trial court to permit the State to inquire about the appellant's prior drug treatment. However, I disagree that the error was not prejudicial requiring reversal.

"When an appellate court determines that error resulted in a criminal matter, the state must overcome the presumption of prejudice by proving beyond a reasonable doubt that the error is harmless." *State v. Greene*, 820 S.W.2d 345, 347 (Mo.App.1991). The majority is correct when it asserts that appellate courts of this state have recognized that "the presumption of prejudice from the erroneous admission of evidence may be overcome when the evidence of guilt is so overwhelming as to eliminate any reasonable doubt that the defendant would have been found guilty even without the erroneously admitted evidence," citing *State v. Troupe*, 863 S.W.2d 633, 636 (Mo.App.1993). The rationale for this is that even without the inadmissible evidence, the jury would have found the defendant guilty. This, however, ignores that in cases where the jury is required to assess and declare punishment, that the jury verdict has two components: 1) a determination of guilt; and, 2) an assessment and declaration of punishment. The majority would only assess the prejudicial effect of the inadmissible evidence on the jury's determination of guilt and ignore its prejudicial effect on the jury's assessment and declaration of punishment. I would hold that in determining the prejudicial effect of the inadmissible evidence, the appellate court should also assess its effect on the sentence imposed.

Initially I would reject the holding of the majority concurring opinion which would hold that the appellant's objection to the inadmissible evidence did not preserve the issue of the prejudicial effect of the evidence on the punishment component of the jury's verdict. I am unaware of any requirement in the law that requires the objecting party to articulate the prejudicial grounds for an otherwise valid objection. For example, we do not require a hearsay objection to articulate the specific prejudice in order to preserve the issue for appeal. I can think of no valid reason for imposing such a requirement for the objection in question here.

A criminal defendant is entitled to a trial by a jury of his peers, who are impartial and free from bias and prejudice. *State v. Storey*, 901 S.W.2d 886 (Mo. banc 1995). This entitlement to jury impartiality logically applies to a jury deliberating on its verdict, which includes its assessment and declaration of punishment. Although this is technically a "judge-sentencing state," unless otherwise provided by law, the jury, as part of its verdict, is required to assess and declare punishment. § 557.036; Rule 29.02. This is, in effect, akin to a recommendation with a cap in that the trial court in sentencing a defendant is free to go below the sentence declared by the jury within the range of punishment, but cannot exceed it, unless the jury failed to at least declare the minimum sentence required by law. § 557.036; Rules 29.04—29.06. As a practical matter and for obvious reasons, it is a very rare day that the trial court imposes any sentence other than that recommended by the jury. In other words, the punishment assessed and declared by the jury is, in all but a very few cases, identical to the sentence imposed by the trial court. Here, we need not wonder as to whether the jury's verdict as to punishment affected the actual sentence imposed by the trial court—they are identical.

Although conceding that the jury's assessment and declaration of punishment does have a substantial impact on what sentence is subsequently imposed, the majority holds that given the roles of the judge and jury in sentencing in this state, there is no need for appellate review of the effect of inadmissible evidence on sentencing in that the trial judge is already required to review the sentencing recommendation of the jury before imposing sentence. Thus, the majority contends that if, in fact, the recommended sentence of the jury was not an appropriate one under the facts and circumstances of the case, the trial judge would never have imposed it. This then is our assurance, so says the majority, that the sentence imposed was not unduly influenced by the inadmissible evidence, and *voila*, the defendant was not prejudiced by the introduction of this evidence. This rea-

soning overlooks the obvious in that the trial judge in reviewing the sentence accepts as fact that the inadmissible evidence in question was admissible. How then can he or she in sentencing the defendant act as a filter or safety net in determining whether the *inadmissible* evidence prejudicially affected the punishment recommended by the jury? Thus, I do not believe that the trial judge serves as an adequate filter or safety net against a defendant's sentence being unduly and wrongfully affected by inadmissible evidence. And, because I agree with the majority that the punishment component of the jury's verdict does substantially affect the sentence imposed in a criminal case, any analysis of the prejudicial effect of inadmissible evidence on a jury verdict must logically include its effect on the punishment assessed and declared by the jury.

Although done in the context of the punishment phase of a death penalty case, the Missouri Supreme Court has recognized the concept of assessing the prejudicial effect of inadmissible evidence on punishment. *State v. Clemmons,* 753 S.W.2d 901, 911 (Mo. banc 1988), cert. denied, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). The court has also recognized the necessity of a jury being fully informed in fixing punishment. *State v. Cline,* 808 S.W.2d 822, 826 (Mo. banc 1991). In *Cline* quoting from *State v. Bevins,* 328 Mo. 1046, 43 S.W.2d 432, 435 (banc 1931), the Missouri Supreme Court held that:

> The duty [fixing punishment] being thus imposed upon the jury, **the defendant certainly has a corresponding right to have that duty properly and intelligently performed,** and to the end that it may be so performed it is necessary that the jury be properly instructed as to the applicable law.

*Cline,* 808 S.W.2d at 826 (emphasis added). And, although grudgingly, the majority does admit that even in non-death penalty cases there is precedent in this state supporting a review of the prejudicial effect of erroneously admitted evidence on the sentence imposed. In *State v. Hernandez,* 815 S.W.2d 67, 71 (Mo.App.1991), the State, in a prosecution for involuntary manslaughter, was allowed to introduce inadmissible evidence consisting of bumper sticker slogans regarding the defen-

dant's views on drinking to excess. In reversing the conviction, the court noted that the prosecutor "argued, in effect, that the jury should **assess a maximum sentence** in this case because of the beliefs of this defendant regarding the use of intoxicants—and the jury assessed the punishment that the prosecuting attorney asked them to assess." *Id.* at 71 (emphasis added). The court held, *inter alia,* that "[i]n order to find that the use of the drinking slogans was not prejudicial, this court would have to find 'beyond a reasonable doubt that the error complained of did not contribute to the **verdict** obtained.' *Satterwhite v. Texas,* 486 U.S. 249, 258–59, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988), citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)." *Id.* (emphasis added). In reading the majority and dissenting opinions in *Hernandez,* the court there, without question, held that regardless of the existence of strong evidence of guilt, other than the inadmissible evidence, the erroneous admission of evidence had a prejudicial effect on the punishment declared by the jury requiring reversal.

The majority, in refusing to assess the prejudicial effect of the inadmissible evidence on appellant's sentence, contends to do so would require us to engage in speculation. I disagree. Questioning whether character assassination, as occurred here, has a prejudicial effect on the assessment and declaration of punishment is tantamount to questioning whether one's good health is adversely affected by being infected with a deadly virus. No speculation is necessary to divine the answer.

Further, the majority, in contending that it would be necessary to engage in impermissible speculation to assess the prejudicial effect of the inadmissible evidence on the sentence, incorrectly hypothesizes that it would be necessary, in order to overcome the presumption of prejudice, for the State to show what the exact sentence would have been absent the inadmissible evidence. With this as a given, the majority then argues that the prosecution would have an impossible burden in demonstrating that the sentence imposed would not have been different had the inadmissible evidence been excluded without resorting to impermissible speculation. This is

a straw argument in that in order to make its point, the majority recognizes a burden which it knows cannot be met without resorting to impermissible speculation. However, I would hold that the correct burden on the State in order to overcome the presumption of prejudice would be to require it to show that there is no reasonable likelihood that the sentence imposed would have been substantially less had the inadmissible evidence been excluded. This is a similar standard to be used in other instances where our appellate courts are called upon to determine the prejudicial effect of trial error. *See State v. Barton,* 936 S.W.2d 781, 787 (Mo. banc 1996) (holding that to establish prejudicial error as to the prosecutor's closing argument, the test is whether there is a reasonable probability the verdict would have been different absent the error); *see also State v. Parker,* 856 S.W.2d 331, 333 (Mo. banc 1993), cert. denied, 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992) (holding in a postconviction relief case that "prejudicially affected" is defined as "a reasonable probability that counsel's error affected the outcome of the trial"); *Clemmons,* 753 S.W.2d at 911 (holding that in the penalty phase of death penalty case there is no prejudice unless "there is no reasonable probability that the jury would have reached a different sentencing...."); *State v. Weaver,* 912 S.W.2d 499 (Mo. banc 1995), cert. denied, — U.S. —, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996) (holding that a due process violation occurs "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different,'" quoting *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985)).

Surely, the majority does not believe that the appellate courts of this state are incapable of determining with reasonable certainty whether the State has met its burden of showing that absent the inadmissible evidence there is no reasonable likelihood the sentence would have been substantially less, especially when it agrees that the appellate

courts are capable of determining whether the jury would have found the defendant guilty absent the inadmissible evidence. To say we can make one determination without engaging in impermissible speculation, but cannot make the other, is inconsistent at best. In any event, the review for prejudice suggested by the dissent would seem to be far preferable to simply throwing up our hands in defeat and saying we realize the inadmissible evidence in question is of such a character that there is a reasonable likelihood it did have a prejudicial effect on the defendant's sentence, but because of an imaginary shield of speculation which we choose to employ, we are helpless to right the wrong inflicted by someone other than the defendant who, nonetheless, is required to bear the injustice it wreaks.

In addition, with respect to its speculation concern, the majority allows the State to escape any accountability for its error, intentional or otherwise, by completely destroying the burden of the State to demonstrate that *its* error was not prejudicial as to the sentence imposed. What the majority is saying, in effect, is that although it is the prosecution's error and its burden to show no prejudice from it, because the State cannot carry its burden without resorting to impermissible speculation, the burden of nonpersuasion should be borne by the defendant. To relieve the prosecution of its burden and from any accountability simply because the burden would be difficult to bear, is illogical and defies principles of due process and fundamental fairness.

In order to insure accountability and to deter the State from risking the introduction of inadmissible evidence, which may only bear on the issue of sentencing, there have to be consequences. When there are no consequences for its actions, the State, in cases where there is already strong admissible evidence as to guilt, unless voluntarily and ethically constrained, is left undeterred to risk the introduction of inadmissible evidence in order to obtain a stiffer sentence.[1] In this

1. I recognize that the vast majority of prosecutors would never intentionally seek to introduce inadmissible evidence simply to obtain tougher sentences. However, just as in the case of police officers and the Exclusionary Rule, the creation of a deterrent is not for the vast majority who will comply with constitutional principles of fair-

respect, the State argued in oral argument that there is a deterrent in the form of the threat of disciplinary proceedings for prosecutors who act intentionally and repeatedly in violating the right of defendants to a fundamentally fair trial. I suggest this threat offers little in the way of addressing the concern raised. Where the error complained of falls short of being intentional, the prosecutor does not operate under any perceived threat of disciplinary proceedings, yet the defendant is still harmed by the error. Further, even if the threat of disciplinary proceedings is real, what relief is afforded to a wronged defendant by an after-the-fact, ancillary proceeding which does nothing to address or change the outcome of the defendant's case as it relates to sentencing?

I am mindful of the fact that there are those who would argue that the dissent's position would cause an added flood of appeals seeking review of criminal sentences. This simply is not true. This argument ignores the fact that the review envisioned by the dissent would *only* occur after trial error has been found by an appellate court. I am not aware of an abundance of appellate cases where trial error has been found as to inadmissible evidence which would arguably have any effect on sentencing. Even more importantly, I have always assumed that the touchstone in determining whether to grant appellate review in order to correct a wrong in a criminal proceeding is not the amount of work which it might inflict on the appellate courts of this state, but is to insure the defendant's constitutional right to a fundamentally fair trial.

Having determined that the correct standard of review for determining prejudice for the admission of inadmissible evidence includes a determination of whether there is a reasonable likelihood that the defendant's sentence would have been substantially less absent the inadmissible evidence, I now turn to the case at bar to determine the prejudicial effect on appellant's sentence, if any, of the evidence of appellant's prior drug treatment. In this respect, the following pertinent exchanges occurred on cross-

ness without coercion, but for the very small

examination between the prosecutor and the appellant:

Q: ... Okay. Ever been arrested before?

MR. MARSHALL: Object.

THE WITNESS: I've been—

THE COURT: Okay. She—

THE WITNESS: —arrested in my home six times with this.

(objection was sustained)

. . . . .

Q. Had you consumed any type of narcotics at that time?

MR. MARSHALL: Objection. Improper question.

THE COURT: Sustained.

. . . . .

Q. You ever receive treatment for drug abuse?

MR. MARSHALL: Objection.

THE WITNESS: I plead the Fifth.

MR. MARSHALL: Relevance.

THE COURT: I'll overrule that objection.

Q. Have you ever received treatment for drug abuse?

A. Yes.

Q. Where was that at?

A. I went to Laughlin for two weeks right after they took my children. I've been in—I was court ordered to go to Mid–Mo and released; and I was court ordered to go to Fulton, and I was released. Twelve hours, March 13, '95.

Q. Have you ever contacted anybody regarding termination of parental rights of your children?

MR. MARSHALL: Object. This is beyond the scope of this charge.

(objection sustained)

I understand that when objections are made to questions and sustained, we do not generally consider the mere asking of those questions in determining prejudice in a case. However, I do not believe we can consider the prejudicial effect of questions asked and

minority who will not.

answered over a valid objection in a vacuum. To assess the true impact of what the majority found to be erroneously admitted evidence on the jury's verdict as it relates to punishment, I believe it is appropriate to consider the theme the prosecutor was pursuing at the time the inadmissible evidence was introduced. To do that, I would look to the context in which the question which elicited the objectionable evidence was being asked. Although objections to three of the four questions set out *supra* were properly sustained, it appears this was a series of questions, the answers to which would have had no arguable relevance to a determination of guilt, did nothing more than inflame the jury by assailing the character of the appellant.

In this case, the prosecutor asked the jury to return a verdict assessing and declaring punishment at 90 days in the county jail. The jury followed this recommendation. The trial court then followed suit and imposed the 90–day sentence. The State's burden is to show that there is no reasonable likelihood that this sentence would have been substantially less if the inadmissible evidence had been excluded. I would review the evidence in this manner.

Given the fact this was not a felony case of kidnaping and flight, but a misdemeanor case of a mother denied visitation who took matters into her own hands in order to see her child, it is highly unlikely that a jury or judge would have been inclined to impose any jail time, let alone 90 days. The only way this would reasonably occur was to inflame the jury by tainting the appellant as an undesirable, who was worthy of its wrath. The inadmissible evidence here, by its very nature, would do exactly that. The prosecutor, who the majority recognizes was armed with obviously admissible evidence sufficient to convict appellant twice over, nonetheless chose to risk reversal by attempting on at least four occasions to introduce clearly inadmissible evidence, finally being successful as to one of these attempts. From this and the fact the prosecutor made a specific recommendation to the jury for sentencing, I am forced to conclude that the prosecutor had evaluated his case as to an appropriate sentence, and by his foray into hazardous waters

when the need to do so to obtain a conviction was unnecessary, was attempting to sway the jury in regard to sentencing and was quite successful in doing so. There is nothing in the record which would support a finding that there is no reasonable likelihood that the appellant's sentence would have been substantially less had the inadmissible evidence of her prior drug treatment been excluded.

As stated previously, the State bears the burden of showing that the error in question was harmless, or in other words, not prejudicial. *Greene,* 820 S.W.2d at 347. I would find that it has failed in its burden. The State did not rebut the presumption of prejudice of the trial court's error induced by the State in that it failed to demonstrate that there was no reasonable likelihood the sentence of appellant would have been substantially less absent the inadmissible evidence. Because the burden of nonpersuasion falls on the State, I would hold that the admission of the evidence of appellant's prior drug treatment was not only error, but reversible error.

Although already quoted by the majority, it bears repeating.

> It is unfortunate when prosecuting officials with otherwise strong evidence in support of a conviction choose to go beyond the legitimate evidence that is available to them and pursue other inflammatory and irrelevant triviality in quest of conviction. When this occurs, the result of appellate review is assured.

*Hernandez,* 815 S.W.2d at 71. And, as Judge Parrish observed in his concurring opinion in *Greene:*

> Prosecuting officials have the duty to prosecute cases with vigor, but they have the duty to do so within the bounds of rules of evidence and within the procedural boundaries prescribed for the conduct of criminal trials.

*Greene,* 820 S.W.2d at 348. Finally, it goes without saying that a passion for law and order, which is admirable, should never be fed by pursuing convictions and tough sentences while sacrificing the right of accused citizens to a fundamentally fair trial. To do

so, is to lose that which should be our goal, regardless of our labels—true justice.