STATE of Missouri, Respondent,

v.

Timothy J. HALL, Appellant.

No. 27959.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 1, 2007.

Kent Denzel, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Timothy J. Hall ("Appellant") appeals his conviction by a jury for one count of the class B felony of distribution of a controlled substance, a violation of section 195.211.[1] Following a jury trial, Appellant was sentenced by the trial court to seven years imprisonment and was ordered to undergo 120 days of shock incarceration pursuant to section 559.115. Appellant asserts one point of trial court error. We affirm the judgment and sentence of the trial court.

Viewing the evidence in the light most favorable to the jury's verdict, *State v. Gonzalez*, 108 S.W.3d 209, 211 (Mo.App. 2003), in "September or October of 2003," Officer Travis Wilson ("Officer Wilson"), an undercover narcotics investigator with the Springfield Police Department, was contacted by a confidential informant who had information related to a drug dealer known as "New York." The informant told Officer Wilson that he could arrange to purchase crack cocaine from "New York," who was later identified as Appellant. On the afternoon of October 1, 2003, at Officer Wilson's request, the informant contacted Appellant and arranged to purchase "a

hundred rock which is either a gram or a hundred dollars worth of crack." Officer Wilson met up with the informant that afternoon and "searched him ... searching for any money, weapons, drugs, and ... contraband." The informant then phoned Appellant to arrange a meeting place and Officer White was able to hear Appellant over the speaker of the informant's cell phone. It was agreed that the parties would meet at a Pricecutter grocery store in North Springfield.

The informant drove to Pricecutter and Officer Wilson rode with him in the passenger seat of the informant's vehicle. They parked in the Pricecutter parking lot facing North. Appellant arrived in a yellow Mustang and parked his vehicle about seven feet away from Officer Wilson and the informant, but Appellant's vehicle was facing South. The informant identified Appellant to Officer Wilson as "New York." The informant exited the vehicle, approached Appellant's vehicle, and talked to Appellant for less than a minute. The informant then "turned toward [Officer Wilson] and asked [him] for [his] money." Officer Wilson "[a]sked [the informant] how much [they] were getting," and the informant replied, "You said a hundred." Officer Wilson gave the informant $100.00 and the informant "very discreet[ly]" handed the money to Appellant. Officer Wilson testified the informant "kind of leaned into the window of [Appellant's] vehicle and they just made sort of a handshake exchange, just kind of a disguised exchange." Appellant passed a small object to the informant and the informant "immediately took what was in his hand and then placed it in his mouth." Appellant and the informant then spoke "for another 30 seconds or 45 seconds." Officer Wilson then got out of the informant's

1. All statutory references are to RSMo 2000.

vehicle and approached Appellant's vehicle, because he was unsure if the transaction had taken place. Officer Wilson engaged Appellant and the informant in "small talk" for about a minute. Officer Wilson asked "where [his] hundred dollar bill was." The informant said he had "it right here," and spit "[f]ive clear plastic baggies that each contained apparently crack cocaine" out of his mouth.[2] Officer Wilson then asked if he could have Appellant's phone number for future transactions and Appellant told him to get it from the informant. Officer Wilson then left with the informant. When he searched the informant, Officer Wilson found no money on him.

Later that evening Officer Wilson saw Appellant's vehicle and stopped him. When he was pulled over, Appellant was accompanied by his uncle, Matthew Nelson ("Mr.Nelson"). Officer Wilson obtained a picture of Appellant from the Director of Revenue and confirmed that it was Appellant who had sold him the drugs.[3]

Appellant testified at trial that he did not sell crack cocaine to Officer Wilson. Appellant stated that his uncle, Mr. Nelson, was known as "New York"[4] and that Appellant, who was not from the Springfield area, happened to answer Mr. Nelson's phone when the informant called him. He related that the informant had told him on the phone that he owed money to Mr. Nelson and needed to meet him to settle his debt. Appellant also testified that he did not tell the informant he was not Mr. Nelson and agreed to meet the informant at Pricecutter. He stated that at Pricecutter the informant approached the vehicle,

put $100.00 in the cup holder, told him to "[j]ust give the money to New York," and "popped his hand up to his mouth" as he walked away from the vehicle.

At the close of all the evidence, the jury found Appellant guilty of distributing a controlled substance. This appeal followed.

In his sole point of trial court error, Appellant maintains the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence. Specifically, he asserts there was insufficient evidence to establish beyond a reasonable doubt that he "committed the act alleged: a sale to [O]fficer Wilson. At most, the evidence showed a sale to the confidential informant, therefore the State failed to prove the crime charged and submitted."

We review the denial of a motion for acquittal to determine if the State adduced sufficient evidence to make a submissible case. *State v. Christian*, 184 S.W.3d 597, 602 (Mo.App.2006). Our standard of review is whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Botts*, 151 S.W.3d 372, 375 (Mo.App.2004). The Court must examine the elements of the crime and consider each in turn; review the evidence in the light most favorable to the judgment; disregard any contrary evidence; and grant the State all reasonable inferences from the evidence. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). We defer to the superior position of the jury to assess the credibility of witnesses and the weight and value of their testimony. *State*

---

2. The bags were submitted to the crime lab for testing and tested positive for a total of 0.53 grams of cocaine base or crack cocaine.

3. Officer Wilson testified that Mr. Nelson and Appellant did not "look anything like" each other.

4. Officer Alberto Estrada, a narcotics investigator for the Springfield Police Department, testified that he knew of two people in the Springfield area who used the name "New York"—Mr. Nelson and Appellant.

*v. Nichols,* 20 S.W.3d 594, 597 (Mo.App. 2000).

Section 195.211.1 sets out:

Except as authorized by sections 195.005 to 195.425 and except as provided in section 195.222, it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance.[5]

Accordingly, "[t]o sustain [Appellant's] conviction, the State was required to prove (1) conscious and intentional possession of the controlled substance, either actual or constructive; (2) awareness of the presence and nature of the substance; and (3) intent to distribute it." *Gonzalez,* 108 S.W.3d at 211.

The State urges this matter is akin to that found in *State v. Burns,* 795 S.W.2d 527 (Mo.App.1990). We agree. In *Burns,* 795 S.W.2d at 528, an undercover police officer arranged for a quantity of methamphetamine to be purchased for her by a confidential informant from the *Burns* defendant. The undercover officer gave the money for the methamphetamine purchase to the informant and they met with the defendant at a restaurant. *Id.* at 529. With the undercover officer and the informant sitting on one side of a table and the defendant sitting on the other side, the informant handed money to the defendant under the table and the defendant "pointed to a crumpled cigarette pack on the table. . . ." *Id.* "The informant picked up the cigarette package, opened it, and examined the contents as he held the package under the table. The informant placed the package in his pocket. . . ." *Id.* The informant later gave the package to the undercover officer and it contained a quantity of methamphetamine. *Id.* The defendant was convicted of selling methamphetamine pursuant to section 195.020.[6] *Burns,* 795 S.W.2d at 528.

On appeal to the Western District of this Court, the defendant argued that "the evidence does not prove the crime charged because the indictment alleges he sold methamphetamine to [the undercover officer] and the evidence did not prove a direct sale to [the undercover officer]." *Id.* The defendant asserted "[t]o be guilty of the crime charged . . . the evidence must prove that he received money directly from [the undercover officer] in exchange for methamphetamine that he gave directly to her." *Id.* The reviewing court disagreed with the defendant and stated that the "charge in an indictment or information alleging the sale of a controlled substance to a specific person can be treated as surplusage if the proof showed that the sale was to another person not named, since the identity of the buyer is not an essential element of the offense." *Id.* Further, the *Burns* court held that "the sub-

---

**5.** Section 195.010(12) defines "distribute" as "to deliver other than by administering or dispensing a controlled substance." Section 195.010(8) defines "deliver" or "delivery" as "the actual, constructive, or attempted transfer from one person to another of drug paraphernalia or of a controlled substance, or an imitation controlled substance, whether or not there is an agency relationship, and includes a sale. . . ."

"Transfer is not defined in the statute, but from Black's Law Dictionary it means: 'to convey or remove from one place, person,

etc., to another; pass or hand over from one to another; specifically, to change over the possession or control of (as, to transfer a title to land). To sell or give.'" *State v. Kellner,* 103 S.W.3d 363, 365 (Mo.App.2003) (quoting BLACK'S LAW DICTIONARY 1497 (6th ed.1990)).

**6.** Section 195.020.1, RSMo 1986, which was repealed in 1989, stated "[i]t is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, distribute, or compound any controlled or counterfeit substance. . . ."

mission must conform to facts proved, and the jury instructions in criminal cases must be based upon the evidence adduced." *Id.* In *Burns,* "[t]he verdict-directing instruction ... provided that the jury, in order to find [the defendant] guilty, had to find that he sold methamphetamine to [the undercover officer]" and "[t]he indictment and the instructions were not at variance in identifying the person to whom [the defendant] sold methamphetamine." *Burns,* 795 S.W.2d at 529. Factually, the court stated that the undercover officer "was acting in concert with a paid confidential informant;" the informant "received methamphetamine from [the defendant] as an agent of [the undercover officer] ...;" and the "substance purchased from [the defendant] was purchased in behalf of the drug task force and [the undercover officer] participated in the purchase." *Id.* Accordingly, the reviewing court found "[t]he crime charged and the jury instructions conformed with the evidence." *Id.*

In the present matter, the felony complaint charged that "on or about 1st day of October, 2003, ... [Appellant] knowingly distributed cocaine base (crack), a controlled substance, to Officer Travis Wilson, knowing that it was a controlled substance." Likewise, Jury Instruction No. 6, the verdict-directing instruction, stated that in order to convict Appellant of the crime charged the jury must find that "on or about October 1, 2003, ... [Appellant] knowingly distributed cocaine base (crack), a controlled substance, to Officer Travis Wilson, knowing that it was a controlled substance...." As in *Burns,* "[t]he crime charged and the jury instructions conformed with the evidence." *Burns,* 795 S.W.2d at 529.

Further, the facts reveal Officer Wilson gave $100.00 to the informant so that the informant could purchase drugs from Appellant. Officer Wilson, having already searched the informant, witnessed the informant conversing with Appellant and observed the informant hand the money to Appellant. Officer Wilson, merely a few feet away, then saw some "sort of a handshake exchange" occur between the informant and Appellant and then Appellant passed a small object to the informant. The informant produced "[f]ive clear plastic baggies" containing crack cocaine and gave them to Officer Wilson. The fact that Appellant did not actually place the drugs in Officer Wilson's hand is irrelevant. *See United States v. Waller,* 503 F.2d 1014, 1015–1016 (7th Cir.1974) (holding that where the defendant "did not physically hand the heroin to the purchaser" she could still be convicted of distributing a controlled substance because her "conduct constituted a constructive transfer of the heroin ..."). The State proved Appellant constructively transferred the drugs to Officer Wilson. § 195.010(8). Additionally, the record shows that Appellant knew the drugs were for Officer Wilson when he sold them to the informant in Officer Wilson's presence. The evidence supports a finding that Appellant had possession of the drugs at issue and that he transferred the drugs to the informant, who then gave the drugs to Officer Wilson. *See Gonzalez,* 108 S.W.3d at 211.

There was sufficient evidence to prove beyond a reasonable doubt that Appellant committed the crime charged. *See id.* at 212. The trial court did not err in denying Appellant's motion for judgment of acquittal. Point denied.

The judgment of the trial court is affirmed.

RAHMEYER, J., and LYNCH, C.J., concur.